226 P.3d 208 (2010)
In the Matter of the Personal Restraint of: Christopher QUINN, Petitioner.
No. 60180-6-I.
Court of Appeals of Washington, Division 1.
March 8, 2010.
*210 Elaine L. Winters, Washington Appellate Project, Seattle, WA, for Petitioner.
Ann Marie Summers, King County Prosecutor's Office, Seattle, WA, for Respondent.
*211 DWYER, J.
¶ 1 Today we decide which party in a collateral attack proceedingthe petitioner or the Statebears the burden of establishing the timeliness of a petition for relief. A personal restraint petitioner who collaterally attacks a criminal judgment and sentence bears the overall burden of demonstrating an entitlement to relief. In the absence of an applicable exception, obtaining relief in a collateral proceeding is conditioned upon the petition's timeliness under RCW 10.73.090, that is, within one year of the date on which the criminal judgment and sentence became final. We hold that the petitioner bears the burden of proving a petition's timeliness and that prison mail records establish that Christopher Quinn timely filed his petition.
¶ 2 We also decide whether the waiver doctrine articulated by our Supreme Court in State v. Mendoza, 157 Wash.2d 582, 141 P.3d 49 (2006), applies to a criminal defendant who is affirmatively misinformed prior to pleading guilty that he or she faces a sentence less onerous than in actuality, learns of the correct, more onerous sentence only after pleading guilty, and attempts to raise the claim of being misinformed with the trial court prior to sentencing. We hold that such a defendant has not waived the right to challenge the validity of his or her guilty plea.
¶ 3 Quinn was affirmatively misinformed prior to pleading guilty that he would be subject to a term of community custody less onerous than the term the trial court was statutorily required to impose. Therefore, he did not plead guilty knowingly, intelligently, and voluntarily. Because Quinn attempted to raise the claim of being misinformed with the trial court prior to sentencing, he did not waive the right to challenge the validity of his guilty plea. Accordingly, remand to allow Quinn to withdraw his plea is required.

I
¶ 4 In 2004, Quinn was charged by information with two counts of child molestation in the first degree, in violation of RCW 9A.44.083, and one count of communication with a minor for immoral purposes, in violation of RCW 9.68A.090.[1] Quinn was initially represented by counsel appointed through the Defenders Association (TDA). The State initially offered to enter into a plea agreement with Quinn, but Quinn did not accept the State's offer. A sentencing recommendation form signed by a deputy prosecuting attorney indicated that the State would recommend that Quinn be placed on community custody for a term of 36 to 48 months after fulfilling his term of confinement. However, Quinn's first attorney does not recall having discussed this sentencing recommendation with him. Quinn's first attorney subsequently disassociated himself from TDA. In August 2005, Quinn was appointed replacement counsel, also through TDA.
¶ 5 In the fall of 2005, Quinn decided to enter a plea of guilty. His plea hearing was scheduled for December 13, 2005. According to the superior court's findings, defense counsel
visited Mr. Quinn, who was in custody during the pendency of his case, and reviewed the plea form with him a few days prior to December 13, 2005. [Defense counsel's] practice was to fill out the Statement of Defendant on Plea of Guilty (plea form) and make two copies, one for the TDA attorney file and one for the client. She did that on this occasion and provided Mr. Quinn with his own copy of the plea form, which he reviewed while she went over and explained the plea form with him... On the copy of the plea form [defense counsel] provided to Mr. Quinn, and on the original form that she provided to the prosecutor, the State's recommendation on page 7, paragraph (g) indicates "36 to 48 mos cc." [Defense counsel] read that paragraph to Mr. Quinn as it was written when she reviewed the plea form with him.
After reviewing the plea form with Quinn, defense counsel transmitted the original plea form to the prosecuting attorney.
*212 ¶ 6 Upon reviewing the plea form, the prosecuting attorney noted that part of the entry concerning the State's sentencing recommendation, that Quinn serve a term of community custody of 36 to 48 months, was inconsistent with statutory requirements. By statute, Quinn was subject to a mandatory life term of community custody for the crime to which he was agreeing to plead guilty.[2] The prosecutor's sentencing recommendation should have indicated that Quinn would be subject to a life term of community custody. The prosecutor subsequently altered the community custody recommendation by "whiting out" the portion reading "36-48 mos [sic]" and writing "life on" in its place. The modified plea form now read: "The prosecuting attorney will make the following recommendation to the judge: ... life on cc." The prosecutor did not notify defense counsel or Quinn of this change to the plea form.
¶ 7 Meanwhile, in the time period between his review of the plea form with his counsel and the date of his plea hearing, Quinn wrote a letter to his attorney expressing his desire to plead guilty by means of an Alford[3] plea. He also sought clarification as to whether he "would be done with DOC" after completing a community custody term of 36 to 48 months. However, Quinn's counsel did not receive this letter prior to Quinn's scheduled plea hearing.
¶ 8 At the December 13, 2005 plea hearing, Quinn signed the original plea form, which now contained the changes made by the prosecutor concerning the length of community custody. However, neither Quinn nor his lawyer was aware of this change. Before the trial court questioned Quinn to ascertain whether he was knowingly, intelligently, and voluntarily pleading guilty, Quinn asked his lawyer whether she had received his letter and stated that he wished to enter an Alford plea. The trial court briefly recessed the proceeding to enable Quinn to discuss this matter with his counsel. After discussing the potential consequences of entering an Alford plea with his counsel, Quinn decided not to do so. Quinn's lawyer did not discuss community custody with him at this time.
¶ 9 The entry of Quinn's guilty plea was rescheduled for December 15, 2005. As of that date, Quinn's attorney still had not received Quinn's letter concerning community custody. Moreover, Quinn's attorney was unable to attend the rescheduled plea hearing, necessitating that another lawyer associated with TDA stand in as Quinn's counsel. Nothing in the case file or in the notes given to the replacement attorney indicated that Quinn had any questions about community custody or that any changes had been made to the plea form after Quinn had initially reviewed it with his primary lawyer. The replacement attorney did not speak to Quinn about the term of community custody. Indeed, she did not speak to him at all until the court called his case and he was escorted by security into the courtroom. However, the replacement attorney did alter the sentencing recommendation on the copy of the plea form retained by TDA to be consistent with the original plea form as modified by the prosecutor.
¶ 10 Quinn pleaded guilty to one count of child molestation in the first degree. The trial court accepted his plea as being entered knowingly, intelligently, and voluntarily. It also instructed the parties to initial those sections of the plea agreement that had been crossed out as being inapplicable. However, the initials of neither the replacement counsel nor Quinn appear near the changes made by the prosecuting attorney to the State's recommendation concerning the term of community *213 custody. Furthermore, the section of the signed plea form setting forth the standard sentencing range, which bears a check mark that does not appear on the copy initially presented to Quinn, does not mention community custody. During its brief plea colloquy with Quinn, the trial court did not articulate the State's sentencing recommendation concerning the length of community custody.
¶ 11 Shortly after entering his guilty plea, Quinn expressed a desire to withdraw it, asserting that his counsel had been ineffective. On January 13, 2006, the scheduled date for Quinn's sentencing, Quinn's counsel withdrew from representation. The sentencing was postponed, and replacement counsel was appointed to represent Quinn on his motion for withdrawal of the plea.
¶ 12 A hearing on Quinn's motion for withdrawal of the plea was scheduled for May 5, 2006. Approximately one week before the hearing date, Quinn's counsel provided him with a copy of the briefing in support of the motion. The briefing did not address the changes made on the original plea form concerning the length of community custody.[4] Attached to the brief, however, was a copy of the original, modified plea form that Quinn had signed the previous December. Upon reading this copy of the plea form, Quinn learned for the first time that his term of community custody would be for life, not for the range of 36 to 48 months stated on the plea form he had initially reviewed.
¶ 13 At the May 5 hearing on Quinn's motion to withdraw his guilty plea, Quinn's counsel advanced the argument presented in the supporting briefing.[5] The trial court indicated that it would deny the motion.
¶ 14 Quinn then personally addressed the court. He complained that, prior to signing the plea form and formally entering his plea, he was not informed of the change concerning community custody. Specifically, he stated that he was unaware that the term of community custody to which he had subjected himself had increased from a range of 36 to 48 months to a term of life.
¶ 15 The trial court did not consider Quinn's argument. The trial court observed that the issue had not been briefed, and the prosecutorthe same individual who changed the plea form after Quinn had reviewed itasserted that the term of community custody was "simply not an issue." In response to the prosecutor's statement, the trial court remarked that changes to a plea agreement without the defendant's knowledge may very well be significant. But rather than informing the trial court that he had, in fact, made changes to the original plea form, the prosecutor argued that it would be improper for the trial court to address the issue of community custody because Quinn's counsel had not raised the issue. The trial court declined to hear any further argument concerning whether Quinn had been misinformed about the term of community custody, indicating to Quinn, however, that he could bring additional motions at "a future time."[6]
*214 ¶ 16 A week later on May 12, 2006, the trial court conducted Quinn's sentencing hearing. At this hearing, Quinn did not raise the issue of misinformation about the term of community custody. The trial court imposed an indeterminate sentence, sentencing Quinn to a term of imprisonment for a minimum of 60 months and a maximum of life and to a term of community custody for life if released before the expiration of the statutory maximum sentence. The trial court also dismissed the two counts remaining in the information. Quinn's judgment and sentence was filed with the superior court clerk and became final on May 15, 2006.
¶ 17 Well after he was sentenced, Quinn moved to withdraw his guilty plea, contending that he was misinformed about the length of the term of community custody to which he would be subject as a result of pleading guilty. The chronology of when Quinn filed his motion is not precisely known. A date stamp on the motion indicates that it was received by the King County Superior Court on June 7, 2007, that is, more than one year after the date on which the judgment became final. However, there are other indicators that Quinn mailed his motion from prison to the superior court within one year of the date on which the judgment and sentence became final. Although the motion itself is not signed or dated, it contains a handwritten notation requesting a hearing for April 27, 2007. Also attached to the motion is a blank form titled "DECLARATION" that is signed by Quinn and dated April 6, 2007. In addition, prison mail system records indicate that Quinn mailed a variety of legal documents to the King County Superior Court on April 13 and 17 and May 2, 7, and 8, 2007.
¶ 18 After receiving Quinn's motion, the superior court transferred it to this court pursuant to CrR 7.8(c)(2) for treatment as a personal restraint petition.[7] The State did *215 not initially challenge Quinn's petition as untimely.[8] Rather, based on the signed and dated declaration attached to the petition and the dates extracted from the prison mail log, the State "assumed" that Quinn's petition was timely filed pursuant to the mailbox rule set forth in General Rule (GR) 3.1.[9]
¶ 19 Upon reviewing the parties' submittals regarding Quinn's petition, we ordered an evidentiary reference hearing in superior court to determine whether Quinn knew that if he pleaded guilty his sentence would include a possible lifetime of community custody. In so doing, we observed that the State did not dispute that Quinn's petition was timely filed pursuant to GR 3.1. The superior court conducted the evidentiary hearing and entered detailed findings of fact concerning the entry of Quinn's guilty plea and his subsequent effort to withdraw it. The superior court concluded that Quinn was affirmatively misinformed about the length of community custody to which he would be subject by pleading guilty and that, although Quinn *216 understood that he was facing a possible life sentence of imprisonment, he believed that he would face a term of community custody ranging only from 36 to 48 months. The superior court further concluded that, at the time he entered his guilty plea, Quinn was unaware of the modification made to the plea form by the prosecutor and that he remained unaware of this change until his replacement counsel presented him with a copy of the original, signed plea form as part of the motion for plea withdrawal that his counsel had prepared.
¶ 20 After the superior court's findings were transmitted to this court, we directed the State to file additional briefing addressing the effect of the trial court's factual findings on Quinn's petition. The State did not challenge the superior court's findings from the reference hearing. Instead, it argued for the first time that Quinn's petition should be dismissed as untimely because Quinn had failed to provide sufficient proof, pursuant to GR 3.1(c), that he had mailed his petition by May 15, 2007, the one-year anniversary of his conviction becoming final. The State also argued, in the alternative, that Quinn had waived the right to challenge his plea under Mendoza because he did not formally seek relief premised upon his lack of notice regarding lifetime community custody prior to sentencing even though he was, by then, aware of the issue.
¶ 21 The acting chief judge determined that Quinn's petition and the State's response presented several nonfrivolous questions, appointed appellate counsel to represent Quinn, and directed the parties to file additional briefing. See RAP 16.11(b). Specifically, the parties were directed to address (1) whether it is the State or Quinn who bears the burden of establishing timely filing based on compliance with GR 3.1; (2) whether the existing record or a supplemented record would show that there was compliance with GR 3.1 in light of the properly-allocated burden; (3) whether the State waived any objection based on GR 3.1 or RCW 10.73.090 by failing to argue that the petition was time-barred in its initial response or at least at some point prior to the conclusion of the reference hearing; and (4) whether, under Mendoza, Quinn waived the issue of misinformation regarding community custody.
¶ 22 In replying to the State's contentions regarding the timeliness of his petition, Quinn asserted that his petition was timely and that the burden of proving otherwise lies with the State. He also submitted additional documents indicating that he filed his petition within one year of the date on which his conviction became final, including a declaration in which he averred that he placed his petition "in the prison legal mail system approximately four weeks before the May 15[, 2007] deadline." In addition, he submitted postage receipts indicating that, on April 17, 2007, he mailed a "motion and supporting docs" to the King County Superior Court and to the trial court judge directly and a "motion and exhibits" to the prosecuting attorney. Also included in Quinn's supplemental submissions is a signed "declaration of service by mailing" dated April 12, 2007, indicating that Quinn mailed a copy of the motion to withdraw his guilty plea and supporting documents to the prosecuting attorney. At oral argument, the State maintained that Quinn was required to affirmatively demonstrate the timeliness of his petition at the time of its filing, but conceded that the supplemental documents submitted by Quinn established the timeliness of his petition under RCW 10.73.090 and GR 3.1.

II
¶ 23 We begin with the threshold issue of whether Quinn bears the burden of proving that his petition was timely. We conclude that he does.
¶ 24 Neither chapter 10.73 RCW nor the Rules of Appellate Procedure governing our review of collateral attacks on criminal judgments[10] expressly allocate the burden of proof with respect to the issue of proving whether a petition is timely. As a general rule, however, the petitioner collaterally attacking a judgment and sentence in a criminal case bears the overall burden of demonstrating an entitlement to relief. See In re Pers. Restraint of Gentry, 137 Wash.2d 378, *217 409, 972 P.2d 1250 (1999) (citing In re Pers. Restraint of Hews, 99 Wash.2d 80, 89, 660 P.2d 263 (1983)); see also In re Pers. Restraint of Runyan, 121 Wash.2d 432, 452 n. 16, 853 P.2d 424 (1993) (citing Miesbauer v. Rhay, 79 Wash.2d 505, 509, 487 P.2d 1046 (1971), overruled in part on other grounds by Wood v. Morris, 87 Wash.2d 501, 554 P.2d 1032 (1976)).
¶ 25 Together, RCW 10.73.090 and RAP 16.4(d) condition the grant of relief in a collateral attack proceeding on the timely filing of the petitionthat is, within one year after the petitioner's conviction becomes finalunless an exception applies.[11]Shumway v. Payne, 136 Wash.2d 383, 397, 400, 964 P.2d 349 (1998). Pursuant to RCW 10.73.090, "[n]o petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." Our Supreme Court has explained that RCW 10.73.090 is a "mandatory rule that acts as a bar to appellate court consideration of PRPs filed after the limitation period has passed, unless the petitioner demonstrates that the petition is based on one of the exemptions enumerated in RCW 10.73.100." In re Pers. Restraint of Bonds, 165 Wash.2d 135, 140, 196 P.3d 672 (2008).
¶ 26 Further, an "appellate court will ... grant relief by a personal restraint petition [only] if other remedies which may be available to petitioner are inadequate under the circumstances and if such relief may be granted under RCW 10.73.090, .100, and.130." RAP 16.4(d) (emphasis added). In addition, RAP 16.9 directs the appellate court to consider whether a collateral attack is timely even before the State responds.[12]
¶ 27 In view of the restriction on our power to grant relief only in the event of a timely filed petition and the allocation of the overall burden of proof to the petitioner, we conclude that the burden of proving that a petition was timely filed is properly assigned to the petitioner. The scheme for judicial review of a collateral attack conditions the grant of relief on the timely filing of the petition. Therefore, a showing that a petition is timely is no less of a prerequisite for obtaining relief than is a demonstration of the merits of the petitioner's claim. See RAP 16.4(c)(2). Given that the petitioner bears the burden of proving the latter, it is consistent with the statutory and procedural scheme for the petitioner to also bear the burden of demonstrating the former.

III
¶ 28 Having clarified that the petitioner bears the burden of proving the timeliness of a petition, we must determine whether a petitioner must unequivocally demonstrate the timeliness of a petition contemporaneously with filing it and, if not, elucidate the appropriate procedure for determining whether the petition was timely filed. Although the State previously assumed that Quinn's petition was timely, it now contends that Quinn cannot meet his burden because it is not clear on the face of his petition that the petition was timely filed.
¶ 29 For the proposition that Quinn was required to unequivocally establish the timeliness of his petition at the time of its filing, the State relies on GR 3.1. Again, GR 3.1 provides that an inmate who is confined in an institution is deemed to have filed a document in any proceeding on the date on which the inmate deposits the document in the institution's internal mail system. GR 3.1(a). The rule specifies that "[i]f an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule." GR 3.1(c). The rule further provides that "[t]imely filing or mailing may *218 be shown by a declaration or notarized affidavit" that substantially follows the template set forth in the rule. GR 3.1(c)
¶ 30 We interpret court rules using principles of statutory construction. State v. Blilie, 132 Wash.2d 484, 492, 939 P.2d 691 (1997) (citing State v. Greenwood, 120 Wash.2d 585, 592, 845 P.2d 971 (1993)). Thus, "[w]e interpret a court rule as though it were enacted by the legislature, giving effect to its plain meaning as an expression of legislative intent." State v. Chhom, 162 Wash.2d 451, 458, 173 P.3d 234 (2007) (citing Greenwood, 120 Wash.2d at 592, 845 P.2d 971). We discern a rule's plain meaning by "reading the rule as a whole, harmonizing its provisions, and using related rules to help identify the legislative intent embodied in the rule." Chhom, 162 Wash.2d at 458, 173 P.3d 234 (citing State v. Williams, 158 Wash.2d 904, 908, 148 P.3d 993 (2006)).
¶ 31 The State misreads GR 3.1(c) as requiring a petitioner to submit a declaration concerning the date of mailing contemporaneously with the petition itself. A basic principle of statutory construction is that the legislature does not intend to create inconsistencies in statutory language. Am. Legion Post No. 149 v. Dep't of Health, 164 Wash.2d 570, 588, 192 P.3d 306 (2008) (citing State ex rel. Peninsula Neighborhood Ass'n v. Dep't of Transp., 142 Wash.2d 328, 342, 12 P.3d 134 (2000)). Thus, we presume that our Supreme Court, in promulgating the General Rules, did not intend to create inconsistencies in the language used in the rules. Further, "we must, when possible, `give effect to every word, clause and sentence of a statute.'" Am. Legion Post No. 149, 164 Wash.2d at 585, 192 P.3d 306 (quoting Cox v. Helenius, 103 Wash.2d 383, 387, 693 P.2d 683 (1985)).
¶ 32 General Rule 3.1(c) mandates that a petitioner use the prison mail system to receive the benefit of the rule. Cf. Jessup v. Clallam County, 7 Wash.App. 692, 693-94, 502 P.2d 1220 (1972) (explaining that the term "must," when used in a statute, creates an imperative condition). However, the rule does not plainly require a petitioner to file a declaration concerning the date of filing. Rather, it provides that such a declaration may be used to establish timely filing. Cf. N.W. Ecosystem Alliance v. Forest Practices Bd., 149 Wash.2d 67, 76, 66 P.3d 614 (2003) (explaining that the use of the term "may" in a statute does not require an action but, rather, permits an action). That a petitioner may prepare a declaration does not mean that the petitioner must do so. Further, GR 3.1 does not indicate that a declaration concerning the date of mailing is the exclusive form of proof of the date of filing pursuant to GR 3.1. Indeed, if the superior court clerk's date stamp on Quinn's petition had indicated that the superior court received the petition prior to May 15, 2007, instead of on June 7, 2007, that fact would tend to establish that Quinn's petition had been timely filed. Although the inclusion of a declaration as to the date of mailing with a petition for relief might help to resolve issues concerning timeliness, GR 3.1 does not require such a contemporaneous filing.
¶ 33 As explained above, Quinn has filed documents indicating that he mailed his motion to withdraw his guilty plea and supporting documents to both the trial court and the prosecuting attorney before May 15, 2007. The State conceded at oral argument that these documents establish that Quinn's petition was timely filed. Accordingly, we conclude that Quinn's petition was timely filed.[13]

IV
¶ 34 Finally, the State contends that, even if Quinn was affirmatively misinformed about the consequences of pleading guilty at the time he entered his plea, he has waived the right to seek withdrawal of his plea because he was aware of the misinformation before sentencing but moved to withdraw his plea after sentencing. We disagree.
¶ 35 A defendant's decision to plead guilty must be knowing, intelligent, *219 and voluntary. Mendoza, 157 Wash.2d at 587, 141 P.3d 49 (citing In re Pers. Restraint of Isadore, 151 Wash.2d 294, 297, 88 P.3d 390 (2004)). To qualify as a knowing and intelligent plea, a guilty plea must be made with a correct understanding of the charge and the consequences of pleading guilty. State v. Wakefield, 130 Wash.2d 464, 472, 925 P.2d 183 (1996). A guilty plea is not knowingly made when it is based on misinformation regarding sentencing consequences. State v. Miller, 110 Wash.2d 528, 531, 756 P.2d 122 (1988). A defendant need not, however, be advised of all collateral consequences of pleading guilty. State v. Ward, 123 Wash.2d 488, 512, 869 P.2d 1062 (1994). The distinction between collateral and direct consequences depends upon whether the consequence "`represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.'" Ward, 123 Wash.2d at 512, 869 P.2d 1062 (quoting State v. Barton, 93 Wash.2d 301, 305, 609 P.2d 1353 (1980)).
¶ 36 The imposition of mandatory community placement or community custody is a direct consequence of a guilty plea. State v. Turley, 149 Wash.2d 395, 399, 69 P.3d 338 (2003); State v. Ross, 129 Wash.2d 279, 284, 916 P.2d 405 (1996). There is no guarantee, however, that Quinn will be placed on community custody. He was sentenced under former RCW 9.94A.712 (2005), the statute governing sentences for nonpersistent sex offenders, and is serving a minimum sentence of 60 months of imprisonment with a statutory maximum sentence of life imprisonment. It is possible that he will be released before serving the maximum term, but his release is not guaranteed. Therefore, in this context, community custody might be properly characterized as a collateral consequence of Quinn's plea. Cf. Ross, 129 Wash.2d at 284, 916 P.2d 405 (explaining that a sentencing consequence is direct when "`the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment'") (quoting Barton, 93 Wash.2d at 305, 609 P.2d 1353).
¶ 37 That a sentencing consequence may be collateral does not necessarily preclude withdrawal of a guilty plea. See State v. Stowe, 71 Wash.App. 182, 187-88, 858 P.2d 267 (1993) (explaining that an affirmative misrepresentation concerning a collateral consequence may warrant withdrawal of a guilty plea). Further, our Supreme Court has indicated that a sentence of community custody is a direct consequence not because it is guaranteed but because the specific term is triggered by the guilty plea. "[C]ommunity placement is a direct consequence because it `affects the punishment flowing immediately from the guilty plea' and `imposes significant restrictions on a defendant's constitutional freedoms.'" Mendoza, 157 Wash.2d at 588, 141 P.3d 49 (quoting Ross, 129 Wash.2d at 285, 286, 916 P.2d 405). Regardless of how Quinn's sentence of community custody is characterizedas a direct or a collateral consequencethe result is the same: by pleading guilty, he necessarily became subject to a life term of community custody, not a range of 36 to 48 months as he was initially informed. Quinn's guilty plea, not some other action, necessarily subjected him to a potential lifetime of community custody. There is no meaningful distinction between characterizing the term of community custody applicable to Quinn as either a direct consequence or a collateral consequence of his guilty plea. Accordingly, even though there remains some uncertainty as to whether Quinn will ever be released from prison and placed on community custody, the same principles that underlie a defendant's right to seek withdrawal of a guilty plea "when he [or she] was not informed of mandatory community placement," Mendoza, 157 Wash.2d at 588, 141 P.3d 49, apply in this context.
¶ 38 After conducting an evidentiary hearing in accordance with our referral of this matter, the superior court found that Quinn, prior to entering his guilty plea, was affirmatively misinformed about the term of community custody to which he would be subject by pleading guilty. In addition, the superior court found that this misinformation was not corrected before Quinn entered his plea. Further, the court determined that Quinn first learned of the life term of community custody only shortly before the hearing on his motion for withdrawal of his guilty plea, which was based on other grounds. *220 Neither party challenges the superior court's findings or conclusions. A review of the record indicates that the superior court's findings and conclusions are well supported by the evidence. Accordingly, we treat the superior court's findings as verities. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 819, 828 P.2d 549 (1992).
¶ 39 The general rule is that "a guilty plea may be deemed involuntary when based on misinformation regarding a direct consequence on the plea, regardless of whether the actual sentencing range is lower or higher than anticipated." Mendoza, 157 Wash.2d at 591, 141 P.3d 49. "Absent a showing that the defendant was correctly informed of all of the direct consequences of his guilty plea, the defendant may move to withdraw the plea." Mendoza, 157 Wash.2d at 591, 141 P.3d 49. However, our Supreme Court also made clear in Mendoza that a defendant's right to challenge a guilty plea is constrained by both temporal considerations and the type of effect on sentencing terms caused by the correction to any misinformation. See Mendoza, 157 Wash.2d at 591-92, 141 P.3d 49.
¶ 40 At issue in Mendoza was "whether a defendant is `misinformed of the direct consequences of a plea' so as to render the plea involuntary when the defendant is told after his plea is entered that he faces a lower standard range sentence than indicated in the plea agreement." 157 Wash.2d at 590, 141 P.3d 49. Mendoza was informed in his plea agreement that, by pleading guilty, he would receive an offender score of 7 and would be subject to a standard sentence range of 51 to 60 months and that the State would recommend a 60-month sentence. Mendoza, 157 Wash.2d at 584, 141 P.3d 49. Mendoza pleaded guilty. Mendoza, 157 Wash.2d at 584, 141 P.3d 49. Prior to sentencing, Mendoza's offender score was recalculated, resulting in a lower offender score of 6 and a correspondingly lower standard sentencing range of 41 to 54 months. Mendoza, 157 Wash.2d at 584, 141 P.3d 49. At Mendoza's sentencing, the State explained that Mendoza's score had been "erroneously calculated in the plea agreement" and then recommended a sentence of 54 months, the high end of the recalculated standard range. Mendoza, 157 Wash.2d at 585, 141 P.3d 49. "Mendoza did not object to the State's revised recommendation or mention any concern about his offender score or the lower standard range." Mendoza, 157 Wash.2d at 585, 141 P.3d 49.
¶ 41 Before he was sentenced, Mendoza moved to withdraw his guilty plea, but he did not do so out of concern that his offender score and the standard sentencing range had initially been miscalculated. Mendoza, 157 Wash.2d at 585, 592, 141 P.3d 49. The trial court denied Mendoza's motion and sentenced him to 52 months of imprisonment. Mendoza, 157 Wash.2d at 586, 141 P.3d 49. Mendoza then appealed directly from his judgment and sentence, "arguing his plea was involuntary because he was not informed of the correct standard range prior to pleading guilty." Mendoza, 157 Wash.2d at 586, 141 P.3d 49.
¶ 42 Although our Supreme Court indicated that Mendoza's plea might not have been a knowing, voluntary, and intelligent one, Mendoza, 157 Wash.2d at 590-91, 141 P.3d 49, it concluded that Mendoza had "waived his right to challenge the voluntariness of his guilty plea." Mendoza, 157 Wash.2d at 592, 141 P.3d 49. The court declared that "when the defendant is informed of the less onerous standard range before he is sentenced and given the opportunity to withdraw the plea, the defendant may waive the right to challenge the validity of the plea." Mendoza, 157 Wash.2d at 591, 141 P.3d 49. It distinguished Mendoza's situation from circumstances in which a defendant may not be deemed to have waived the right to challenge a plea, such as where the defendant was "not informed of the mistake before sentencing" or "had agreed to be subject to a higher sentence than authorized by statute." Mendoza, 157 Wash.2d at 591, 141 P.3d 49 (distinguishing State v. Walsh, 143 Wash.2d 1, 17 P.3d 591 (2001) and In re Pers. Restraint of Goodwin, 146 Wash.2d 861, 50 P.3d 618 (2002)). But "waiver is permitted when the defendant is advised of the correct standard range before sentencing and is sentenced within a statutorily authorized lower standard range than contemplated by the plea *221 agreement." Mendoza, 157 Wash.2d at 591-92, 141 P.3d 49. Mendoza waived the right to challenge his plea because he "did not object to sentencing or move to withdraw his plea as involuntary and because his lower sentence [was] statutorily authorized." Mendoza, 157 Wash.2d at 592, 141 P.3d 49.
¶ 43 The State misreads Mendoza as standing for the broad proposition that a defendant waives the right to challenge a guilty plea on the basis of misinformation whenever the defendant (1) is made aware of the misinformation and the effect of any correction prior to sentencing and (2) fails to move for withdrawal of the plea before being sentenced, regardless of whether the correction results in a sentence that is less or more onerous than initially anticipated. The court in Mendoza held that "if the defendant was clearly informed before sentencing that the correctly calculated offender score rendered the actual standard range lower than had been anticipated at the time of the guilty plea, and the defendant does not object or move to withdraw the plea on that basis before he is sentenced, the defendant waives the right to challenge the voluntariness of the plea." Mendoza, 157 Wash.2d at 592, 141 P.3d 49 (emphasis added). This is not the situation in which Quinn finds himself.
¶ 44 "Plea agreements are contracts and are analyzed under basic contract principles." State v. Harris, 102 Wash.App. 275, 280, 6 P.3d 1218 (2000) (citing State v. Sledge, 133 Wash.2d 828, 838, 947 P.2d 1199 (1997)). Because a plea agreement implicates fundamental constitutional rights of the accused, the defendant's contract rights implicate due process considerations. Sledge, 133 Wash.2d at 839, 947 P.2d 1199. "Due process requires a prosecutor to adhere to the terms of the agreement." Sledge, 133 Wash.2d at 839, 947 P.2d 1199. "[T]he terms of ... [a plea] agreement are generally defined by what the defendant understood them to be when he or she entered into the plea agreement." State v. Oliva, 117 Wash. App. 773, 779, 73 P.3d 1016 (2003) (citing State v. Cosner, 85 Wash.2d 45, 51-52, 530 P.2d 317 (1975)).
¶ 45 It is established that Quinn was affirmatively misinformed prior to entering his guilty plea that he would be subject to a term of community custody ranging from 36 to 48 months as opposed to a life term. It is further established that Quinn was unaware that the prosecuting attorney modified the community custody information in the plea form prior to Quinn entering his plea. Accordingly, based on Quinn's understanding of the sentencing consequences, the terms of his plea agreement provided that he would be subject to a sentence of community custody less onerous than the sentence ultimately imposed. Unlike the situation presented in Mendoza, Quinn's liability as a result of pleading guilty increased, unbeknownst to him, after the plea form was altered. Thus, it cannot be reasonably said that Quinn obtained the expected benefit of the bargain forged pursuant to his plea agreement.
¶ 46 Nor does the record herein indicate that Quinn was dilatory in raising the misinformation issue once he learned of its existence. Unlike Mendoza, who raised no objection when the prosecuting attorney notified him of the favorable, recalculated offender score, Quinn personally attempted to raise the issue of misinformation at the hearing on his motion for plea withdrawal. We recognize that a trial court has the discretion to decline to consider "[a] pro se motion ... [when a defendant is] represented by competent counsel." State v. Bergstrom, 162 Wash.2d 87, 97, 169 P.3d 816 (2007). But, while the trial court was within its rights not to address Quinn's concern at the time he personally raised it, it is nevertheless clear that Quinn was not lying in the weeds, in order to later spring this issue upon the prosecutor, nor was he acquiescing in the situation. Moreover, it is notable that the prosecutor took no steps to inform the trial court of the facts surrounding Quinn's claim of misinformation, instead choosing to be dismissive of Quinn's factually correct assertions. Finally, it is notable that Quinn did exactly as the trial court instructed him to raise the issue at a "future time," consistent with court rules.[14] The facts of this case do *222 not warrant a conclusion that Quinn waived this claim.
¶ 47 It is established that Quinn was misinformed about the consequences of pleading guilty. Therefore, his guilty plea was not knowingly, intelligently, and voluntarily made. He is entitled to withdraw it.
¶ 48 Remanded for further proceedings.
We concur: SCHINDLER, C.J., and ELLINGTON, J.

DECLARATION
NOTES
[1] We base our recitation of facts relating to the entry of Quinn's guilty plea and his subsequent motion for withdrawal of that plea on the superior court's uncontested findings of fact entered after conducting an evidentiary hearing in this matter pursuant to this court's reference order.
[2] Because Quinn was pleading guilty to the offense of child molestation in the first degree, the trial court was required to sentence him to a term of confinement ranging from a minimum term of imprisonment to the statutory maximum punishmentlife imprisonment. See former RCW 9.94A.712 (2005), recodified as RCW 9.94A.507; RCW 9A.20.021(1)(a); RCW 9A.44.083(2). In addition, in the event that Quinn was released from prison before the maximum term of imprisonment expired, the trial court was required to sentence Quinn to a term of community custody that would run until the expiration of the maximum term of imprisonment. See former RCW 9.94A.712(5). Thus, the trial court was required to sentence Quinn to a life term of community custody.
[3] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[4] Quinn's counsel contended that Quinn's guilty plea was invalid because the written plea agreement did not include a written promise that the State would move to dismiss the remaining counts in the information. Thus, Quinn's counsel argued, the plea agreement did not confer a substantial benefit on Quinn in exchange for his guilty plea.
[5] It is not clear from the record whether Quinn's replacement counsel was by this time aware of the modification made to the plea form.
[6] After counsel addressed the arguments advanced in the briefing attendant to Quinn's motion for withdrawal, the following colloquy occurred:

THE COURT: Frankly, a guilty plea, because of the significant rights that a defendant gives up, in this case, Mr. Quinn, there are always the motion to withdraw a guilty plea can be brought, I think, pretty much at any time where there is a manifest injustice as far as what was promised and the State not carrying out what it had promised.
[QUINN]: This copy that was given to me, of the plea agreement, Your Honor, the day before I was signing it, it had been altered. It was changed. I was never informed that these changes were made.
THE COURT: What changes are you talking about?
[QUINN]: From minimum term of sixty months to thirty-six, and forty-eight months of community custody to a lifetime of community custody and a minimum of sixty months.
THE COURT: Well, this hasn't been briefed and are we prepared to discuss this matter? I'm not sure. I have not read this.
No, let's do one thing at a time.
[THE PROSECUTOR]: No, frankly, Your Honor, this is not an issue at this time. I mean, it's just simply not an issue.
THE COURT: Well, Mr. Quinn has raised something that, whenever I hear that something was added to a plea agreement without his knowledge, if that's the case, then that certainly could have some significance. But I don't know if I know the facts of this case well enough or whether or not we can dispose of it now or whether or not it should be the subject of a future hearing.
[THE PROSECUTOR]: Here's my difficulty. Mr. Quinn is represented by counsel. He can't bring his own motions.
THE COURT: Correct.
[THE PROSECUTOR]: I assume that [defense counsel] has met with Mr. Quinn, has reviewed the record. He is bringing whatever legal motions he thought he could bring, based on what he reviewed, to withdraw the guilty plea. That's all I'm aware that we would be here on, and I would ask the Court not to allow Mr. Quinn now to sort of raise all of his own issues on his own. He has got to do it through counsel.
THE COURT: I think that's appropriate. The only reason I engaged in this was in case there was a simple explanation for this, and it could be resolved without our needing to come back for another hearing. But [the prosecutor], speaking for the State, is correct.
Mr. Quinn, you are represented by counsel. You certainly should talk to your attorney, take his advice as far as how to proceed and that's the manner in which we conduct theses [sic], in an orderly manner.
[QUINN]: This is the third time I have seen this gentleman since January 19th. I have written him numerous times. I have tried to raise him by phone. He only told me last week that I would be having this hearing today.
[THE COURT]: Well, I mean, the effective any times, there are questions as to what a party, a defendant in a criminal case, believes is the effective assistance of counsel. And I think it'sobviously, it's a joint effort between the attorney and the client to work and endeavor to properly and effectively defend a criminal case. So I'm not going to make any judgments now about the number of phone calls that are necessary or the number of visits that are necessary.
You talk with your attorney, you should talk with your attorney, explain your situation. If you are not satisfied, there are legal remedies that you can ask for. Again, there is no guarantee the Court will accept it. At some point, the Court needs to trust the judgment of the persons, that are trained in the law, as far as what they are going to do.
So, in this case, I'm not going to hear what your position is or any problems you have, but I want to make sure you understand that I don't consider that you are waiving or giving up any rights that you have to be effectively represented by an attorney.
So I guess there will be, in terms of talking to your attorney, if there are more motions, either that your attorney agrees with or a motion on your part because of disagreements, that will remain for a future time.
I have signed the order.
Report of Proceedings (May 5, 2006) at 11-14.
[7] CrR 7.8(c) sets forth the procedures for a superior court's consideration of a motion to vacate a criminal judgment. It provides:

(1) Motion. Application shall be made by motion stating the grounds upon which relief is asked, and supported by affidavits setting forth a concise statement of the facts or errors upon which the motion is based.
(2) Transfer to Court of Appeals. The court shall transfer a motion filed by a defendant to the Court of Appeals for consideration as a personal restraint petition unless the court determines that the motion is not barred by RCW 10.73.090 and either (i) the defendant has made a substantial showing that he or she is entitled to relief or (ii) resolution of the motion will require a factual hearing.
(3) Order to Show Cause. If the court does not transfer the motion to the Court of Appeals, it shall enter an order fixing a time and place for hearing and directing the adverse party to appear and show cause why the relief asked for should not be granted.
[8] Except in certain circumstances not presented herein, a collateral attack on a judgment and sentence in a criminal case, which includes a motion to withdraw a guilty plea and a personal restraint petition, must be filed within one year of the date on which the judgment and sentence becomes final. RCW 10.73.090. The statute provides:

(1) No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.
(2) For the purposes of this section, "collateral attack" means any form of postconviction relief other than a direct appeal. "Collateral attack" includes, but is not limited to, a personal restraint petition, a habeas corpus petition, a motion to vacate judgment, a motion to withdraw guilty plea, a motion for a new trial, and a motion to arrest judgment.
(3) For the purposes of this section, a judgment becomes final on the last of the following dates:
(a) The date it is filed with the clerk of the trial court;
(b) The date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction; or
(c) The date that the United States Supreme Court denies a timely petition for certiorari to review a decision affirming the conviction on direct appeal. The filing of a motion to reconsider denial of certiorari does not prevent a judgment from becoming final.
RCW 10.73.090.
[9] GR 3.1 provides, in full:

(a) If an inmate confined in an institution files a document in any proceeding, the document is timely filed if deposited in the institution's internal mail system within the time permitted for filing.
(b) Whenever service of a document on a party is permitted to be made by mail, the document is deemed "mailed" at the time of deposit in the institution's internal mail system addressed to the parties on whom the document is being served.
(c) If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing or mailing may be shown by a declaration or notarized affidavit in form substantially as follows:
I, [name of inmate], declare that, on [date], I deposited the foregoing
[name of document], or a copy thereof, in the internal mail system of [name of institution] and made arrangements for postage, addressed to:
[name and address of court or other place of filing];
[name and address of parties or attorneys to be served].
I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.
DATED at [city, state] on [date].
[signature]
(d) Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after filing or service of a document, and if an inmate files or serves the document under this rule, that period shall begin to run on the date the document is received by the party.
[10] RAP 16.3-.15 and 16.24-.27 govern our view of collateral attack proceedings.
[11] Numerous exceptions to the one-year limitation period for bringing a collateral attack are articulated in RCW 10.73.100. As explained, supra, none of these exceptions applies to Quinn's petition.
[12] RAP 16.9 provides: "The respondent must serve and file a response within 60 days after the petition is served, unless the time is extended by the commissioner or clerk for good cause shown, or unless the court can determine without requiring a response that the petition should be dismissed under RCW 10.73.090 or RCW 10.73.140."
[13] Because of the resolution of this issue, we need not address the issue of whether the State waived its challenge to the timeliness of Quinn's petition by not raising that argument at the outset of this proceeding.
[14] As our Supreme Court recently explained, the same standard of review applies to a motion for withdrawal of a guilty plea regardless of whether the motion is brought before or after sentencing. See State v. A.N.J., No. 81236-5, 2010 WL 314512, at *6 (Wash. Jan. 28, 2010). Thus, by reading the applicable rule, Quinn would not have been alerted that he was waiving his right to seek relief by waiting until after sentencing to do so.