2014 NOV 24 AM 9: 00



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>             Respondent,<br><br>v.<br><br>ERIK VINCENT BARNES,<br><br>             Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | DIVISION ONE<br><br>No. 71144-0-I<br>(consol. with No. 71145-8-I)<br><br>UNPUBLISHED OPINION<br><br>FILED: November 24, 2014 |

DWYER, J. — Erik Barnes pleaded guilty to one count each of unlawful possession of a firearm in the first degree, possession of a controlled substance (methamphetamine) with intent to deliver, and possession of a controlled substance (methamphetamine). He now appeals, alleging that his guilty pleas were invalid because, prior to sentencing, he was misinformed of a direct consequence of one of his pleas. In a statement of additional grounds, Barnes makes three additional contentions: that the State did not prove his prior convictions, that his juvenile convictions should not have been counted in his offender score, and that some of his prior convictions should have been counted as the same criminal conduct. Finding no error, we affirm.

I

Barnes was charged with three offenses under two separate cause numbers. Under cause number 12-1-01700-4, he was charged with one count

each of unlawful possession of a firearm in the first degree and possession of a controlled substance (methamphetamine) with intent to deliver. Under cause number 12-1-02050-1, he was charged with one count of possession of a controlled substance (methamphetamine).

Barnes was offered a package plea deal. Each offer read: "This Plea Agreement is dependent upon the defendant entering a plea of guilty in all other cause numbers included in the State's plea offer." At a combined plea hearing, held on March 1, 2013, he pleaded guilty to all three charges. The plea statements indicated that the standard sentence ranges were 87-116 months of confinement plus 18-36 months of community custody for the firearm charge, 60+-120 months of confinement plus 12 months of community custody for the charge of possession with intent to deliver, and 12+-24 months of confinement plus 12 months of community custody for the possession charge.[1] The court found that Barnes's guilty pleas were knowingly, voluntarily, and intelligently entered. Sentencing was postponed to allow Barnes to be evaluated for a possible drug offender sentencing alternative (DOSA).

In its DOSA risk assessment report, the Department of Corrections concluded that a DOSA sentence would "not appropriately mitigate [Barnes's] continued risk of future re-offense." Barnes then moved to withdraw his guilty pleas under both cause numbers, asserting that his pleas were invalid for two reasons. First, he claimed that he did not know that the trial court had the

---

[1] The court repeated this information at the change of plea hearing, except that it did not reiterate that there would be community custody on the possession charge.

discretion to deny a DOSA sentence. Second, he stated that he did not know his offender score and was "shocked" upon hearing the applicable score. The trial court conducted a factual hearing on Barnes's allegations, after which it determined that Barnes had been advised about both the discretionary nature of the DOSA and his offender score. The court denied the motion and proceeded to sentencing.

At sentencing, the prosecutor recommended 90 months of confinement on the firearm charge, 90 months of confinement on the possession with intent to deliver charge, and 24 months of confinement on the possession charge, all to be served concurrently. The prosecutor also recommended 12-month terms of community custody on the two drug charges. The prosecutor advised the court that—despite what it said in the plea paperwork—there was no community custody on the firearm charge. Both defense counsel and Barnes then addressed the court. Except for recommending a lower sentence on the drug possession charge, defense counsel asked the court to follow the prosecutor's recommendation. Barnes asked the court for an appeal bond. The court then sentenced Barnes in accordance with the prosecutor's recommendations.

II

Barnes contends that his guilty plea to unlawful possession of a firearm is invalid because he was misinformed that 18-36 months of community custody would be imposed as part of his sentence. He also contends that, because this plea was entered as part of a package deal, he is entitled to withdraw his pleas to each of the three offenses. We disagree.

"Due process requires an affirmative showing that a defendant entered a guilty plea intelligently and voluntarily." State v. Ross, 129 Wn.2d 279, 284, 916 P.2d 405 (1996); U.S. CONST. amend. XIV, WASH. CONST. art. I, § 3. This standard is reflected in CrR 4.2(d), "which mandates that the trial court 'shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea.'" State v. Mendoza, 157 Wn.2d 582, 587, 141 P.3d 49 (2006). "Under CrR 4.2(f), a court must allow a defendant to withdraw a guilty plea if necessary to correct a manifest injustice." In re Pers. Restraint of Isadore, 151 Wn.2d 294, 298, 88 P.3d 390 (2004). "An involuntary plea produces a manifest injustice." Isadore, 151 Wn.2d at 298.

A guilty plea is not knowingly made when it is based on misinformation regarding a direct sentencing consequence. Mendoza, 157 Wn.2d at 584, 590-91; In re Pers. Restraint of Quinn, 154 Wn. App. 816, 835, 226 P.3d 208 (2010). A sentencing consequence is direct when "'the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.'" Ross, 129 Wn.2d at 284 (internal quotation marks omitted) (quoting State v. Barton, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980)). Mandatory community custody or community placement is a direct sentencing consequence because it affects the punishment flowing immediately from the guilty plea and imposes significant restrictions on a defendant's constitutional freedoms. Ross, 129 Wn.2d at 285-86; Quinn, 154 Wn. App. at 836.

When a guilty plea is based on misinformation, the defendant may move

to withdraw the plea based on involuntariness—regardless of whether the actual sentencing range is lower or higher than anticipated. Mendoza, 157 Wn.2d at 591. "However, if the defendant was clearly informed before sentencing that the correctly calculated offender score rendered the actual standard range lower than had been anticipated at the time of the guilty plea, and the defendant does not object or move to withdraw the plea on that basis before he is sentenced, the defendant waives the right to challenge the voluntariness of the plea." Mendoza, 157 Wn.2d at 592. The defendant need not be expressly informed that he can withdraw his plea, see State v. Blanks, 139 Wn. App. 543, 549, 161 P.3d 455 (2007), nor need there be any "waiting period" between the advisement of the error and sentencing. Blanks, 139 Wn. App. at 550.

The Blanks decision controls the outcome of this claim of error. In that case, Blanks moved to withdraw his guilty plea prior to sentencing. The court denied Blanks's motion. At sentencing, the court determined that two of Blanks's prior convictions encompassed the same criminal conduct, a difference that reduced his standard sentence range. Blanks made no further attempt to withdraw his plea. On appeal, Blanks argued that he pleaded guilty based on a misunderstanding of the applicable offender score.

The appellate court rejected his claim. As in Mendoza, it was held that Blanks had waived the claim.

> Blanks argues that he was not given enough time because the trial court ruled on his offender score directly before it sentenced him. But Mendoza requires only the "opportunity to withdraw the plea," not a waiting period. Blanks was informed of the miscalculation, it worked in his favor, and he did not move to withdraw his plea on

this basis. Therefore, [he] impliedly waived this argument.

Blanks, 139 Wn. App. at 550 (citation omitted).

Such was the case herein. After unsuccessfully moving to withdraw his guilty plea, Barnes learned that the actual term of community custody was less than he had believed. After learning this, both he and his attorney had an opportunity to address the court. Either could have asked the court to allow Barnes to withdraw his plea based on the lessened term of community custody, but neither did so. As in Blanks, the failure to act waived any argument that the decreased term warranted withdrawal of the plea. Accordingly, Barnes has not established an entitlement to appellate relief.

III

In a statement of additional grounds (SAG), Barnes makes three additional contentions. First, he contends that due process was violated when his sentence was based "on the prosecutor's bare assertions or allegations of prior convictions."[2] SAG at 11 (quoting State v. Hunley, 175 Wn.2d 901, 915, 287 P.3d 584 (2012)). Given that Barnes affirmatively acknowledged his criminal history, we disagree.

When a defendant affirmatively acknowledges the existence of prior convictions, the State is not required to present further proof of those convictions. State v. Ross, 152 Wn.2d 220, 232-33, 95 P.3d 1225 (2004). In the plea agreements, Barnes specifically agreed that the prosecutor's understanding of

---

[2] This is the content of his claim, though he frames it thusly: "Mr. Barnes Due Process was violated when the sentencing court did not allow him to withdraw his plea or have a hearing to prove his offender score." SAG at 11.

his criminal history was "accurate and complete." Therefore, there was no due process violation.

Barnes's second contention is that the trial court should not have counted his juvenile adjudications in calculating his offender score. This claim is based on obsolete statutory provisions. Under the original Sentencing Reform Act (SRA), juvenile convictions did not constitute "criminal history" for crimes committed after the defendant's 23rd birthday. Former RCW 9.94A.030(11), as enacted by Laws of 1981, ch. 137, § 3. This rule was abolished in 1997. Since then, the definition of "criminal history" has been the same for juvenile and adult convictions. Laws of 1997, ch. 338, §2(12) (now codified as RCW 9.94A.030(11)).

The effect of these changes was clarified in 2002:

> A prior conviction that was not included in an offender score calculated pursuant to a former version of the sentencing reform act remains part of the defendant's criminal history.

Laws of 2002, ch. 107, § 2(13)(c) (now codified as RCW 9.94A.030(11)(c)). For crimes committed after the effective date of the 2002 amendment, the former rules for the "wash out" of juvenile convictions no longer apply. State v. Varga, 151 Wn.2d 179, 193-95, 86 P.3d 139 (2004).[3]

---

[3] Barnes erroneously relies on two cases—State v. Smith, 118 Wn. App. 288, 75 P.3d 986 (2003), and State v. Dean, 113 Wn. App. 691, 54 P.3d 243 (2002)—in support of his contention that the trial court should not have used his "washed out" juvenile adjudications in sentencing him. Both are distinguishable. In those cases, the trial courts were ordered to resentence the defendants according to the law in effect at the time the offenses at issue were committed. Since the offenses at issue in both cases were committed prior to 2002, this entailed applying a different legal provision than was properly applied in this case.

This change did not violate any vested rights of defendants who had previously committed juvenile offenses.

> The 2002 SRA amendments serve only to enhance the penalty for [the defendant's] crime that he committed after the amendments' effective date. Indeed, [the defendant] could have avoided the effect of the 2002 SRA amendments by not committing a subsequent crime.

Varga, 151 Wn.2d at 196-97 (citations omitted). See also Landgraf v. USI Film Prods., 511 U.S. 244, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994) ("A statute does not operate 'retrospectively' merely because it . . . upsets expectations based in prior law." (citation omitted)).

Nonetheless, Barnes claims that he should be allowed to "withdraw" his guilty pleas to the juvenile offenses. This claim cannot be raised in this proceeding.

> It is well settled that the State is not required to prove the constitutional validity of prior convictions used to calculate a defendant's offender score on a current conviction. And a criminal defendant generally has no right to contest the validity of a previous conviction in connection with a current sentencing.

State v. Irish, 173 Wn.2d 787, 789-90, 272 P.3d 207 (2012) (citation omitted). A defendant can only challenge a prior conviction if it was constitutionally invalid on its face. State v. Ammons, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986). The record does not contain any documents relating to the juvenile convictions and there is no indication that those convictions are facially invalid. Therefore, we reject Barnes's challenge to the validity of those convictions.

Finally, Barnes contends that some of his prior convictions should have been counted as the same criminal conduct. Moreover, he asserts that the

purported errors in his offender score entitle him to withdraw his guilty pleas to the current offenses. We disagree.

We review an offender score calculation de novo but review a "'determination of what constitutes the same criminal conduct [for] abuse of discretion or misapplication of the law.'" State v. Mutch, 171 Wn.2d 646, 653, 254 P.3d 803 (2011) (alteration in original) (internal quotation marks omitted) (quoting State v. Tili, 139 Wn.2d 107, 122, 985 P.2d 365 (1999)). "[I]t is the defendant who must establish the crimes constitute the same criminal conduct." State v. Aldana Graciano, 176 Wn.2d 531, 539, 295 P.3d 219 (2013); see also State v. Johnson, 180 Wn. App. 92, 104, 320 P.3d 197, review denied, 181 Wn.2d 1003 (2014).

In this case, Barnes made no attempt at the sentencing hearing to establish that any of his prior convictions constituted the same criminal conduct. In fact, the only information in the record relevant to those convictions is found in the plea statements, which each contained the following statement concerning Barnes's criminal history: "The defendant agrees the attached Appendix A – Prosecutor's Understanding of Defendant's Criminal History . . . and the attached Sentencing Guidelines scoring form(s) are accurate and complete." Barnes did not meet his burden of establishing that any of his prior offenses constituted the same criminal conduct. Consequently, the trial court did not abuse its discretion in counting them as separate offenses.

As there was no error in the calculation of his offender score, Barnes is not entitled to withdraw his guilty pleas to the current offenses on that basis.[4,5]

Affirmed.

Dwyer, J.

We concur:

Leach, J.

Becker, J.

---

[4] Barnes also refers at length to the rule of lenity, which has no application here.

[5] In his statement of the case, Barnes includes a number of additional allegations of error, upon which he does not further elaborate. He has not established an entitlement to relief on any of those claims.