IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,                )
                                    )        No.  31271-2-III
           Respondent,              )
                                    )
      v.                            )
                                    )        PUBLISHED OPINION
JOSE ANTONIO MANAJARES,[1]          )
                                    )
           Appellant.               )

SIDDOWAY, J. — In *Padilla v. Kentucky*, 559 U.S. 356, 367, 130 S. Ct. 1473, 176

L. Ed. 2d 284 (2010), the United States Supreme Court held that constitutionally

competent counsel must advise a client facing criminal charges about the risk of

deportation.  In *In re Personal Restraint of Yung-Cheng Tsai*, our Supreme Court held

that while *Padilla* created a "new rule" under federal law for retroactivity purposes,

Washington has long required by statute that criminal defendants be advised of

immigration consequences of a guilty plea, so *Padilla* simply applied a Washington

lawyer's duty to a specific concern.  183 Wn.2d 91, 100-03, 351 P.3d 138 (2015)

(applying *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989)); *cf.*

---

[1] Appellant's name is spelled "Manajares" in the information and judgment and sentence; however, he signs his name spelled "Manjares."  For purposes of this opinion the appellant's name is spelled "Manajares."

*Chaidez v. United States*, 568 U.S. ___, 133 S. Ct. 1103, 1107, 185 L. Ed. 2d 149 (2013) (arriving at a different result under federal law, which had not previously recognized a lawyer's duty under the Sixth Amendment to the United States Constitution to advise a criminal defendant of collateral immigration consequences). Because *Padilla* did not announce a new rule under Washington law, it applies retroactively to matters on collateral review. *Tsai*, 183 Wn.2d at 103.

Addressing the distinct issue of whether *Padilla* is a retroactively applicable "significant change in [the] law" that overcomes the one-year time bar to collateral relief provided by RCW 10.73.100(6), the *Tsai* court held that it was. *Tsai*, 183 Wn.2d at 103. This is because several Washington appellate decisions issued before *Padilla* appeared to foreclose any possibility that the unreasonable, prejudicial failure to provide statutorily required advice on deportation consequences could ever be ineffective assistance of counsel. *Tsai*, 183 Wn.2d at 105.

Jose Antonio Manajares presents an argument made possible and timely by these cases: he contends he should be entitled under CrR 7.8 to withdraw his 2002 guilty plea to unlawful imprisonment because his lawyer failed to advise him that the plea would subject him to removal or exclusion from this country. Whether his lawyer's performance was deficient depends on the clarity of the law, however, and Mr. Manajares fails to show that law he contends was not explained to him was truly clear in 2002.

2

Because his lawyer's representation was not deficient, we affirm denial of his motion to withdraw his plea.

## FACTS AND PROCEDURAL BACKGROUND

In December 2002, Jose Manajares entered an *Alford*[2] plea to one count of unlawful imprisonment. Because he was not acknowledging a statement of the factual basis for his plea, his statement on plea of guilty included his agreement that "the court may review the police reports and/or a statement of probable cause supplied by the prosecution." Clerk's Papers (CP) at 7. In accepting the plea, the trial court was asked by the State to review the affidavit of probable cause and acknowledged that it had.

In 1983, the Washington Legislature had declared that a noncitizen defendant must be warned about immigration consequences before pleading guilty to a crime, and the standard plea form signed by Mr. Manajares included a general warning of immigration consequences[3] added following that legislation. *Tsai*, 183 Wn.2d at 101; LAWS OF 1983,

---

[2] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). In *Alford*, the United States Supreme Court addressed whether a guilty plea can be accepted when it contains a waiver of trial but no admission of guilt. *Id.* at 33. It held that when such a plea is accompanied by evidence against the defendant that substantially negates his claimed innocence and provides a means by which the judge can test whether the plea is being intelligently entered, the validity of the plea "cannot be seriously questioned." *Id.* at 38.

[3] "If I am not a citizen of the United States, a plea of guilty to an offense punishable as a crime under state law is grounds for deportation, exclusion for admission to the United States, or denial of naturalization pursuant to the laws of the United States." CP at 6.

3

ch. 199, § 1(1), *codified at* RCW 10.40.200(1). Mr. Manajares acknowledged that the plea form was read to him by an interpreter. The interpreter affirmed that Mr. Manajares acknowledged his understanding of the translation and subject matter of the form.

Before accepting the plea, the court asked Mr. Manajares if he understood that his "plea of guilty to this count is grounds for deportation from the United States, . . . exclusion from admission to the United States and denial of naturalization," and he answered yes. CP at 65. The court accepted the plea and sentenced Mr. Manajares to 41 days of incarceration and 12 months of community custody.

Shortly after he entered the plea, Mr. Manajares was removed from the United States by the United States Immigration and Naturalization Service. A later-prepared report of investigation by a deportation officer indicated that Mr. Manajares had been "removed subsequent to a conviction for commission of an aggravated felony." CP at 123.

Almost 10 years after his 2002 conviction, Mr. Manajares filed a CrR 7.8 motion to vacate his *Alford* plea. He argued he received ineffective assistance of counsel because the lawyer representing him in connection with the 2002 charges, David De Long, failed to advise him that deportation or exclusion from the country was a certain result of the conviction. In support of his motion, Mr. Manajares testified by declaration:

> I know that Mr. David De Long told me that I could apply to stay in the
> United States once I got to the immigration court. I remember this only
> because he also wished me good luck with it when I saw him for the last

4

time. Even I was looking forward to going to the immigration court after his words. I figured that he must know something about it even if he wasn't an immigration attorney. Supposing Mr. De Long had even told me differently that he just didn't know about what the immigration court would do and that he might have even made more problems for me because of how he filled out my forms, I would have been very concerned. I would have told him that I needed to be sure about all of this before I just agreed to plead guilty.

Statement of Additional Grounds.[4]

Mr. Manajares also submitted an affidavit from Mr. De Long, who testified he was unable to remember Mr. Manajares's case but that it was his "practice to go over [his] clients' guilty pleas with them in their entirety including the general immigration warnings." CP at 72. His affidavit also states:

> Criminal defense counsel at the time of Mr. Manajares guilty plea were not required under Washington law to specifically advise as to the immigration consequences of entering a guilty plea. At the time of his guilty plea, I was not sufficiently cognizant of the immigration consequences of criminal convictions to know for certain whether or not Mr. Manajares would actually be deported or not.

*Id.* at 71-72.

The trial court refused to entertain the motion to vacate because Mr. Manajares was not present. Mr. Manajares appealed. A commissioner of this court affirmed the trial court's order "that denied the motion to vacate" on other grounds, holding that *Padilla* did not have retroactive effect; Mr. Manajares's motion was untimely, having

---

[4] Mr. Manajares's statement of additional grounds for review contained only his declaration; it identified no issues requiring review.

5

been filed over a year after the judgment became final; and, given the warning of immigration consequences set forth in his statement of plea of guilty that Mr. De Long reviewed with his client, Mr. Manajares failed to demonstrate ineffective assistance of counsel. Commr's' Ruling (Nov. 20, 2013) at 4.

Mr. Manajares petitioned the Washington Supreme Court for review. In November 2015, the Supreme Court remanded the appeal to this court for reconsideration in light of its decision in *Tsai*. In addition to holding that *Padilla* was a significant change of law that can overcome the one-year time bar to collateral relief provided by RCW 10.73.100(6), *Tsai* established that *Padilla* overcomes the bar only in cases where a defense lawyer fails to research and apply the law, not where the lawyer affirmatively offers incorrect advice. *Tsai*, 183 Wn.2d at 107. Washington courts had long recognized that where a plea is entered in reliance on erroneous advice, it may be rendered involuntary and withdrawn. *Id.*[5]

Finally, the court in *Tsai* reiterated its holding in *State v. Sandoval*, 171 Wn.2d 163, 173, 249 P.3d 1015 (2011) that the general warning statement included in the standard plea form is not itself the required advice and does not excuse a defense lawyer from the duty to research and advise a client of relevant law. *Tsai*, 183 Wn.2d at 101. As

_____

[5] Portions of Mr. Manajares's affidavit arguably complain of incorrect advice. Because that complaint would be time-barred and is not the basis of his briefing on appeal, we do not address that implication of his affidavit further.

6

observed in *Sandoval*, if defense counsel couches advice about immigration

consequences with uncertainty, it may negate the effect of any warning included in the

plea statement or given by the trial court. *Sandoval*, 171 Wn.2d at 172-73.

## ANALYSIS

With the major legal issues as to Mr. Manajares's ability to collaterally challenge

his 14-year-old conviction resolved,[6] what remains is the issue of whether Mr. De Long

provided ineffective assistance of counsel. Relying on the affidavit of an immigration

lawyer, Mr. Manajares argued in the trial court that (1) by entering an *Alford* plea that

incorporated the affidavit of probable cause and the police reports, he unwittingly created

a record of conviction that would establish a crime of moral turpitude and prevent him

from ever acquiring a legal resident status, and (2) he unwittingly pleaded to a crime that

was subsequently treated as an "aggravated felony," thereby subjecting him to a lifetime

ban to reentry. Br. of Appellant at 4-5.

"When determining whether a defense attorney provided effective assistance, the

underlying test is always one of 'reasonableness under prevailing professional norms.' "

---

[6] It is now clear that Mr. Manajares's motion was not time-barred.

*Sandoval* and *Tsai* foreclose the State's argument that Mr. Manajares cannot assert ineffective assistance of counsel since he was read the general warning in the plea form, claimed to have understood it, and was reminded of it by the judge.

While the State continues to defend the trial court's refusal to entertain Mr. Manajares's motion because of his absence, we decline to consider that issue (as did our commissioner) and proceed directly to the merits.

*Tsai*, 183 Wn.2d at 99 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). In *Padilla*, the United States Supreme Court recognized that "[i]mmigration law can be complex," and that "[s]ome members of the bar who represent clients facing criminal charges . . . may not be well versed in it." *Padilla*, 559 U.S. at 369. Because "[t]here will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain," the Court announced the following standard for assessing a criminal defense lawyer's duty:

> When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear.

*Id.* (footnote omitted).

Mr. Manajares's ineffective assistance of counsel claim thus depends on whether truly clear adverse immigration consequences would follow from his 2002 plea that Mr. De Long failed to apprehend and explain.

Immigration officials who reviewed Mr. Manajares's conviction for unlawful imprisonment found it to be an aggravated felony. We first consider whether the law was truly clear in 2002 that a conviction for unlawful imprisonment qualified as an aggravated felony that triggers deportation.

8

### 1.    *Aggravated felony*

To determine whether a prior conviction qualifies as an aggravated felony for the purposes of deportation, courts employ the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990). "Under *Taylor*'s 'categorical' approach, 'the issue is not whether [the] actual conduct constituted an aggravated felony, but whether the full range of conduct encompassed by [the state statute][ of conviction] constitutes an aggravated felony,' and we 'look only to the fact of conviction and the statutory definition of the prior offense' to make this determination." *United States v. Pallares-Galan*, 359 F.3d 1088, 1099 (9th Cir. 2004) (first and second alterations in original) (quoting *Taylor*, 495 U.S. at 602). "The key . . . is elements, not facts." *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 2283, 186 L. Ed. 2d 438 (2013).

The first step in the categorical approach is to look to whether the statute of conviction defining the crime of conviction categorically fits within the "generic" federal immigration definition of an "aggravated felony." *Moncrieffe v. Holder*, 569 U.S.___, 133 S. Ct. 1678, 1684, 185 L. Ed. 2d 727 (2013).

> By "generic," we mean the offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison. Accordingly, a state offense is a categorical match with a generic federal offense only if a conviction of the state offense "'necessarily' involved . . . facts equating to [the] generic [federal offense]." *Shepard v. United States*, 544 U.S. 13, 24, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (plurality opinion).

*Id.* (alterations in original).

Mr. Manajares was convicted of unlawful imprisonment under RCW

9A.40.040(1), which, applies to a person who "knowingly restrains another person."

"Restrain" is defined for this purpose to mean

> to restrict a person's movements without consent and without legal
> authority in a manner which interferes substantially with his or her liberty.
> Restraint is "without consent" if it is accomplished by (a) physical force,
> intimidation, or deception, or (b) any means including acquiescence of the
> victim, if he or she is a child less than sixteen years old or an incompetent
> person and if the parent, guardian, or other person or institution having
> lawful control or custody of him or her has not acquiesced.

RCW 9A.40.010(6).

Neither Mr. Manajares's immigration expert nor his lawyer on appeal have

identified any federally defined aggravated felony into which unlawful imprisonment

under RCW 9A.40.040 fits categorically, or would ever fit. Where no authorities are

cited in support of a proposition, we are not required to search out authorities, but may

assume that counsel, after diligent search, has found none. *DeHeer v. Seattle Post-*

*Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Mr. Manajares has not

demonstrated that Mr. De Long provided deficient representation in failing to foresee that

immigration officials would categorize Mr. Manajares's crime as an aggravated felony.

10

### *2. Crime of moral turpitude*

Mr. Manajares's principal argument on appeal is that Mr. De Long should have foreseen that he was pleading to a "crime involving moral turpitude" under 8 U.S.C. § 1182(a)(2)(A)(i)(I). Conviction of a crime involving moral turpitude renders an alien ineligible to be admitted to the United States. *Id.* According to the affidavits and exhibits filed with the motion to withdraw the guilty plea, Mr. Manajares's father is a lawful permanent resident of the United States and had petitioned in 2001 for a visa for Mr. Manajares. Mr. Manajares argues that but for his plea and conviction of a crime involving moral turpitude, he could have applied in the future to adjust his status to that of a lawful permanent resident. Supp. Br. of Appellant at 3-4. He also argues that it was deficient performance for his trial lawyer not to advise him against entering an *Alford* plea.

### *Limited significance of* Alford *plea*

Mr. Manajares supports his motion with evidence that it was the prevailing professional norm in 2002 for criminal defense lawyers to avoid entry of an *Alford* plea by a noncitizen client because *Alford* pleas enlarge the "record of conviction." To determine whether a conviction triggers an immigration consequence such as removal, "the immigration judge or other reviewing authority may look to a strictly limited official set of documents known as the 'record of conviction.'" ANN BENSON & JONATHAN MOORE, WASH. DEF. ASS'NS IMMIG. PROJECT, PRACTICE ADVISORY ON REPRESENTING

11

NONCITIZENS ACCUSED OF MISDEMEANOR ASSAULT OFFENSES—BOTH DV AND NON-DV CASES—UNDER RCW 9A.36.041, at 4 (Feb. 2007) [7] (citing *United States v. Rivera-Sanchez*, 247 F.3d 905, 908 (9th Cir. 2001) (en banc) (quoting *Taylor*, 495 U.S. 575)). Included in the record of conviction are the statutory definition of the crime, the charging document, and the written plea agreement, among other documents not relevant here. *Notash v. Gonzales*, 427 F.3d 693, 697 (9th Cir. 2005).

Not ordinarily included in the record of conviction are the pre-sentence report, affidavit of probable cause, arrest reports, dismissed informations, and statements from the prosecutor only. Benson & Moore, *supra*, at 4-5. However, "where these documents or facts are stipulated by the defendant as providing the factual basis for the plea they will be deemed incorporated into the reviewable" record of conviction. ANN BENSON & JONATHAN MOORE, WASH. DEF. ASS'NS IMMIG. PROJECT, UNDERSTANDING HOW CONVICTIONS ARE ANALYZED UNDER IMMIGRATION LAW & STRATEGIES TO CRAFT PLEAS & CREATE A CRIMINAL RECORD TO AVOID/MITIGATE IMMIGRATION CONSEQUENCES, at 9 (Feb. 2012);[8] *see also In re Milian-Dubon*, 25 I. & N. Dec. 197, 197 (2010) (incorporation of police report); *Parrilla v. Gonzales*, 414 F.3d 1038, 1044

---

[7] http://library.niwap.org/wp-content/uploads/2015/IMM-Man-PracticeAdvisoryNoncitizensAccusedMisdemeanorAssault-02.07.pdf.

[8] http://www.defensenet.org/immigration-project/immigration-resources/navigating-and-crafting-pleas-for-noncitizens/Categorical%20Analysis%20%20Factual%20Basis%20Advisory%202-23-12%20FINAL.pdf.

(9th Cir. 2005) (incorporation of certificate of probable cause). Mr. Manajares's *Alford* plea incorporated the police reports and affidavit of probable cause as the factual bases for the plea.

Still, it is not automatically deficient performance for a lawyer to permit a client to enter an *Alford* plea. Even the contemporaneous professional literature submitted in support of Mr. Manajares's motion states that "as a rule,[9] noncitizens should not do *Alford* pleas." CP at 139.

It is important to bear in mind that while the record of conviction is expanded by an *Alford* plea, that expanded record is reviewed for a limited purpose. We have previously discussed the categorical approach, under which a noncitizen defendant's crime of conviction is compared to a crime that federal law identifies as a basis for exclusion or removal. That comparison sometimes reveals that the statute of conviction is "divisible," in that it prohibits some conduct that would fit within the federal basis for removal or exclusion, and other conduct that would not.

That was not the case when we earlier compared unlawful imprisonment to "aggravated felonies." But when it *does* happen, courts engage in a modified categorical approach, under which the record of conviction is reviewed—in the case of a guilty plea, to assess whether the plea was, or was not, to the version of the crime that corresponds to

---

[9] "As a rule" is defined as meaning "as a general thing : ORDINARILY, USUALLY." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1986 (1993).

13

a federal basis for removal or exclusion. *See Descamps*, 133 S. Ct. at 2284. The scope of review is "narrow": it is "not to determine 'what the defendant and state judge must have understood as the *factual basis* of the prior plea,' but only to assess whether the plea was to the *version of the crime* . . . corresponding to [the federal] generic offense." *Id.* (emphasis added) (quoting *Shepard*, 544 U.S. at 25-26). This was not clear before *Descamps*, and in the Ninth Circuit an *Alford* plea presented a risk that an incorporated affidavit of probable cause or police report would describe facts constituting more crimes or wrongdoing than the crime of conviction.[10] After *Descamps*, the risk presented by an *Alford* plea is only that incorporated affidavits or reports might demonstrate that the defendant's plea was to a version of the crime of conviction that is a basis for removal or exclusion.

In *Tsai*, our Supreme Court observed that even a defense lawyer's complete failure to provide the advice required by RCW 10.40.200 can be objectively reasonable and thus not deficient in some situations. *Tsai*, 183 Wn.2d at 102 n.2. We presume that counsel was effective. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

---

[10] In *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011), which was abrogated by *Descamps*, the Ninth Circuit Court of Appeals had held that if the state crime of conviction had a single, indivisible set of elements that was broader than (and thereby different from) a crime that is a basis for removal or exclusion, the court could look at the record of conviction to see if it rested on *facts* that satisfied a basis for removal or exclusion.

Accordingly, it is not enough for Mr. Manajares to show that *Alford* pleas are generally disfavored for noncitizens.

> *The law was not truly clear that Mr. Manajares's* Alford *plea would have adverse immigration consequences*

Under the Immigration and Nationality Act, "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude (other than a purely political offense) . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i)(I). Congress has not defined "crime involving moral turpitude." In decisions predating Mr. Manajares's December 2002 plea, courts most often held that "'[m]oral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.'" *Hamdan v. Immig. & Naturalization Serv.*, 98 F.3d 183, 186 (5th Cir. 1996) (quoting the Board of Immigration Appeals' decision in the same case); *Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001) ("Moral turpitude 'is a nebulous concept, which refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, contrary to the rules of morality and the duties owed between man and man, either one's fellow man or society in general.'" (quoting *In re Danesh*, 19 I. & N. Dec 669, 670 (B.I.A. 1988))); *see accord Rodriguez-Herrera v. Immig. & Naturalization*

15

*Serv.*, 52 F.3d 238, 239 (9th Cir. 1995); *Itani v. Ashcroft*, 298 F.3d 1213, 1215 (11th Cir. 2002).

In determining whether Mr. Manajares's crime of conviction was a crime involving moral turpitude, we again begin with the categorical approach. Under the categorical approach, unlawful imprisonment under RCW 9A.40.040(1) fits within the immigration concept of a "crime involving moral turpitude" only if any and all conduct proscribed by the Washington statute falls within that concept. *See Parrilla*, 414 F.3d at 1042.

The burden is on a defendant alleging ineffective assistance of counsel to overcome the strong presumption that counsel's representation was effective. *McFarland*, 127 Wn.2d at 335. Neither Mr. Manajares's immigration expert nor his lawyer on appeal identify authority predating the December 2002 guilty plea that would have made it truly clear that Mr. Manajares's plea admitted committing acts that, for immigration purposes, constituted the essential elements of a crime involving moral turpitude.

Our own research has identified subsequent authority holding that unlawful imprisonment under a similar, if not identical, California statute is *not* a crime involving moral turpitude. *Turijan v. Holder*, 744 F.3d 617, 621-22 (9th Cir. 2014) (reasoning that the crime did not require "an intent to injure someone, an actual injury, or a protected class of victims," and, because simple kidnapping had previously been determined not to be a categorical crime of moral turpitude, then false imprisonment (a lesser included

16

offense) could not be either (citing *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1218 (9th Cir. 2013)). Our research also reveals that as of 2002, "moral turpitude" had been characterized as a "vague and nebulous standard . . . whose definition has never been fully settled." *Marmolejo-Campos v. Gonzales*, 503 F.3d 922, 927 (9th Cir. 2007) (D.W. Nelson, J., dissenting) (citing pre-2002 case law), *adhered to on reh'g en banc*, 558 F.3d 903 (9th Cir. 2009). It reveals that by that time, the crimes of fraud, murder, rape, robbery, kidnapping, voluntary manslaughter, some involuntary manslaughter offenses, aggravated assaults, mayhem, theft offenses, spousal abuse, child abuse, and incest had been found to be turpitudinous; on the other hand assault and battery, malicious mischief, alien smuggling, assault with a deadly weapon, indecency, rioting, and money laundering had all been found *not* to involve moral turpitude. *Id.* (citing cases). Burglary was found not to involve moral turpitude in 2005. *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1018 (9th Cir. 2005), *abrogated in part by Holder v. Martinez Guiterrez*, 566 U.S. 583, 132 S. Ct. 2011, 182 L. Ed. 2d (2012).

Mr. Manajares fails to show that the state of federal immigration law in December 2002 was such that Mr. De Long could have researched and discovered that Mr. Manajares's *Alford* plea carried a truly clear risk of adverse consequences. Mr. De Long's review with Mr. Manajares of the general statutory deportation warning was therefore competent representation. Since Mr. Manajares fails to demonstrate deficient

17

No. 31271-2-III
*State v. Manajares*

representation, we need not reach his claim of prejudice. *State v. Malone*, 72 Wn. App.

429, 438, 864 P.2d 990 (1994).

The trial court's order effectively denying the motion is affirmed.

Siddoway, J.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Pennell, J.

18