IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35352-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL HERBERT DUNBAR, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |
| LORIEN L. ALDRICH and GREGORY | ) | |
| JAMES WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

LAWRENCE-BERREY, C.J. — Daniel Dunbar appeals after his conviction for

possession of a stolen motor vehicle. He argues he is entitled to a new trial because he

did not validly waive his right to a jury trial and because the trial court's factual findings

do not support its conclusion that he knowingly possessed a stolen motor vehicle. We

conclude Dunbar validly waived his right to a jury trial and the trial court's failure to

enter adequate findings is harmless beyond a reasonable doubt. We affirm Dunbar's

conviction, but remand with instructions to strike the criminal filing fee and the

deoxyribonucleic (DNA) collection fee.

## FACTS[1]

In August 2016, Click It RV & Auto (Click It RV) received a 2006 Chevy Suburban on trade at the dealership's Sprague Avenue location in Spokane Valley. The Suburban had distinctive chrome wheels and a customized front grille.

On September 5, 2016, Steven Myers, general manager of Click It RV's Sprague lot, noticed the Suburban was missing and attempted to locate it. Myers searched for the Suburban in accordance with the dealership's protocol and could not locate it. On September 6, 2016, while returning from a lot affiliated with Click It RV, Myers saw the missing Suburban being driven in downtown Spokane. He lost the Suburban in traffic and called the Spokane Police Department and reported the Suburban as stolen.

On October 15, 2016, Washington State Patrol Trooper Jason Bart saw a Suburban weaving across its lane of travel and initiated a traffic stop. Trooper Bart identified the driver as Dunbar.

---

[1] In his assignments of error, Dunbar asserts the trial court erred in entering findings of fact 16, 22, 27, 35, 36, and 40 absent sufficient evidence in the record. Dunbar fails to argue these assigned errors in his brief and, in fact, clarifies in his reply that he is not challenging the sufficiency of the evidence. *See* Reply Br. of Appellant at 7 n.1. We deem the above assignments of error abandoned and accept the trial court's findings of fact as verities on appeal.

Trooper Bart ran a search on the license plate, which indicated the plate belonged to a 2001 Chevy Yukon. The plate frame indicated Cliff's Quality Auto Sales (Cliff's). Trooper Bart then checked the Suburban's vehicle identification number and learned that it was reported stolen from Click It RV.

Dunbar insisted he had purchased the Suburban from Cliff's and claimed he had supporting papers in the back of the Suburban. However, there were no such papers in the back of the Suburban. Dunbar was placed under arrest for suspicion of possession of a stolen motor vehicle. The contents of the Suburban were placed beside the vehicle, and Dunbar's girlfriend Brittany Snow retrieved the items.

Trooper Bart notified Myers about the Suburban. Myers met the trooper at the Suburban and confirmed the Suburban was the one missing from Click It RV, even though the distinctive chrome wheels and grille had been removed.

It was later determined that the missing wheels had been posted for sale on Craigslist with Brittany Snow's contact information. The wheels were sold to Dunbar's brother for $800. When asked the night of the arrest what happened to the wheels, Dunbar told law enforcement that the wheels had been stolen.

*Procedure*

The State charged Dunbar with possession of a stolen motor vehicle. His first trial

ended in a mistrial. The State chose to retry Dunbar.

At the pretrial conference, defense counsel told the court that Dunbar wished to

waive his right to a jury and proceed to a bench trial. In Dunbar's presence, defense

counsel stated:

> I think Mr. Dunbar and I have discussed his options, and we'd be ready to
> proceed to a bench trial on Monday. I think we'd waive jury this time and
> hopefully that is substantive notice for the court. I believe there's a form I
> fill out, and I can do that as soon as I get back to the office, but Mr. Dunbar
> and I just spoke about it for the first time yesterday, and I just wanted to
> double check with him this morning before I made any commitments to the
> court.

Report of Proceedings (RP) (Mar. 17, 2017) at 5. The court did not conduct a

colloquy with Dunbar about the jury waiver. The court instead asked Dunbar's

counsel if she was willing to commit to waiving the jury. She responded, "Yes,

Your Honor." RP (Mar. 17, 2017) at 7. She neglected to submit the written

waiver prior to trial as promised.

Trial began on March 21, 2017, and was completed the following day.

During trial, Dunbar sought to admit evidence that he purchased the Suburban

from Cliff's. The evidence could not be authenticated and was rejected by the

court. Dunbar argued there was insufficient evidence that he knew the Suburban

was stolen when he possessed it.

On March 31, 2017, defense counsel presented a waiver of jury trial. The

waiver was signed by Dunbar and read, in part:

> I understand that under the Constitutions of the United States and the
> State of Washington . . . I am entitled to a trial by jury of my peers . . . . I
> do hereby voluntarily and with knowledge of these rights, waive my right to
> a jury trial and consent to the trial of this case by the court.

Clerk's Papers (CP) at 20.

The trial court entered its written findings of fact and conclusions of law on

April 17, 2017. Those findings do not contain an explicit finding that Dunbar ever

knew that the Suburban was stolen. The findings imply that Dunbar lied about

purchasing the Suburban and about the wheels being stolen. One can infer the trial

court found that Dunbar lied because he knew the Suburban was stolen. But the

findings do not make this explicit.

The trial court concluded, "Dunbar possessed the Suburban with knowledge

that it had been stolen." CP at 31. The trial court found Dunbar guilty of the

charged offense and entered a judgment of conviction on May 3, 2017. The

judgment included legal financial obligations of $200 for the criminal filing fee

and $100 for the DNA collection fee.

Dunbar timely appealed to this court.

ANALYSIS

A.    VALID WAIVER OF JURY TRIAL

Dunbar claims his jury waiver was invalid because the trial court failed to obtain

his personal expression of waiver prior to trial.  Because Dunbar signed a written waiver

of jury trial, we disagree.

A constitutionally sufficient waiver may be established where the record includes

either a written waiver signed by the defendant or a personal expression by the defendant

of an intent to waive, or an informed acquiescence."  *State v. Trebilcock*, 184 Wn. App.

619, 632, 341 P.3d 1004 (2014).  Here, the record includes a written waiver of jury trial

signed by Dunbar.  This is all that is required.

To the extent Dunbar's argument is based on the distinction between a pretrial and

a posttrial waiver, the State responds that Dunbar is precluded from raising this issue

because of the invited error doctrine.  We agree.

Under the invited error doctrine, a party who sets up an error at trial cannot claim

that very action as an error on appeal and receive a new trial.  *State v. Henderson*, 114

Wn.2d 867, 868, 792 P.2d 514 (1990).  Here, Dunbar's counsel assured the trial court she

would complete the jury waiver when she returned to her office—thus implying she

would file it prior to trial. So to the extent Dunbar complains about the jury waiver being filed late, he is precluded from requesting a new trial.

Dunbar also argues—irrespective of *when* the jury waiver was filed—that a trial court has the obligation to personally question the defendant to ensure the waiver is knowing and intelligent. His argument contradicts the notion that a written and signed jury waiver is in itself sufficient. Dunbar does not cite any authority for his argument. "Where no authorities are cited in support of a proposition, we are not required to search out authorities but may assume that counsel, after diligent search, has found none." *State v. Manajares*, 197 Wn. App. 798, 810, 391 P.3d 530 (2017), *review denied*, 189 Wn.2d 1045, 415 P.3d 99 (2018).

B.   FAILURE TO ENTER ADEQUATE FINDINGS HARMLESS BEYOND A REASONABLE DOUBT

Dunbar argues the trial court's factual findings are inadequate to support its conclusion that he knowingly possessed a stolen motor vehicle. We agree, but conclude the error was harmless beyond a reasonable doubt.

In a case tried without a jury, the court must enter findings of fact and conclusions of law. CrR 6.1(d). In the findings of fact and conclusions of law, "[e]ach element must be addressed separately, setting out the factual basis for each conclusion of law." *State v. Banks*, 149 Wn.2d 38, 43, 65 P.3d 1198 (2003). "In addition, the findings must

7

specifically state that an element has been met." *Id.* (citing *State v. Alvarez*, 128 Wn.2d 1, 19, 904 P.2d 754 (1995)).  Here, the trial court's findings of fact are inadequate because they do not specifically state that Dunbar possessed the Suburban with knowledge it was stolen.  But this failure does not require reversal and a new trial.

In *Banks*, the Washington Supreme Court affirmed the defendant's bench trial conviction for unlawful possession of a firearm even though the trial court did not specifically address "knowledge" in its findings and conclusions.  149 Wn.2d at 43, 46. The *Banks* court concluded that the trial court's error was harmless beyond a reasonable doubt because the defendant contested knowledge and the trial court's findings and conclusions indicated it considered knowledge.  *Id.* at 46.

Here, Dunbar's central argument at trial was he did not know the Suburban was stolen.  *See e.g.*, RP (Mar. 21, 2017) at 21-22.  In addition, the trial court specifically addressed the knowledge element when it concluded, "Dunbar possessed the Suburban with knowledge that it had been stolen."  CP at 31.  Similar to *Banks*, we conclude that the trial court's inadequate findings were harmless beyond a reasonable doubt because Dunbar contested knowledge and because the trial court's findings and conclusions indicated it considered knowledge.

C. CRIMINAL FILING FEE AND DNA COLLECTION FEE

After briefing was complete, Dunbar filed a motion to allow supplemental briefing on whether the trial court erred by imposing on him, an indigent defendant, a $200 criminal filing fee and a $100 DNA collection fee. We grant Dunbar's motion and consider the issue.

House Bill 1783, which became effective June 7, 2018, prohibits trial courts from imposing discretionary legal financial obligations on defendants who are indigent at the time of sentencing. LAWS OF 2018, ch. 269, § 6(3); *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). This change to the criminal filing fee statute is now codified in RCW 36.18.020(2)(h). As held in *Ramirez*, these changes to the criminal filing fee statute apply prospectively to cases pending direct appeal prior to June 7, 2018. *Ramirez*, 191 Wn.2d at 738. Accordingly, the change in law applies to Dunbar's case. Because Dunbar is indigent, the criminal filing fee must be struck pursuant to *Ramirez*.

The change in law also prohibits imposition of the DNA collection fee when the State has previously collected the offender's DNA as a result of a prior felony conviction. LAWS OF 2018, ch. 269, § 18. The uncontested record establishes that Dunbar has multiple Washington State felonies since 1990. Since that time, Washington law has required defendants with a felony conviction to provide a DNA sample. LAWS OF 1989,

9

ch. 350, § 4; RCW 43.43.754. Given the uncontested record, we presume that a DNA sample has been collected from Dunbar prior to the current judgment and sentence. We, therefore, direct the trial court to also strike the DNA collection fee.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.