# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of: | DIVISION ONE |
| | No. 83159-3-I |
| TRAVIS CARSONDEAN PENDLEY, | UNPUBLISHED OPINION |
| Petitioner. | |

DWYER, J. — Travis Pendley filed this personal restraint petition challenging his April 2018 convictions, resulting from a plea agreement, for second degree murder and firearm theft. Pendley contends that the State failed to preserve material evidence, that his speedy trial rights were violated, and that his counsel was constitutionally ineffective, rendering his guilty plea involuntary. Because Pendley has not established an entitlement to relief, we deny his petition.

I

On July 18, 2016, Travis Pendley shot and killed James Smith after an argument over stolen tools.[1] Pendley, who was homeless, claims that, as he was defecating behind a bush in the park, he heard Smith dumping tools onto the ground. Smith and his friend, Zachary Nicholas, were using the tools to fix their bikes. When Pendley emerged, he saw Smith holding Pendley's yellow toolbox.

---

[1] Additional facts are set forth in State v. Pendley, No. 78752-7-I (Wash. Ct. App. Apr. 13, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/787527.pdf.

Smith ran into the woods and left the toolbox there, then returned to approach Pendley. Pendley claims that Smith punched him in the face, although Nicholas denies this. Pendley then shot Smith with his shotgun.

On July 25, 2016, the State charged Pendley with theft of a firearm, unlawful possession of a firearm in the first degree, and murder in the second degree with a firearm enhancement.

As part of the investigation, police interviewed John Behrens, a family friend of Pendley's who lived nearby. Behrens stated that Pendley had stashed his shotgun behind Behrens's house, and that earlier that afternoon Pendley had said that a man had stolen his tools and that Pendley was "gonna get this guy." Pendley denied making this statement or seeing Behrens prior to the shooting that day. Instead, Pendley stated that he only saw Behrens after the shooting. The State indicated to the defense that if the case went to trial, the State would amend the information to charge Pendley with first degree murder rather than second degree murder, presumably using Behrens's statement as evidence of premeditation.

Following several continuances, trial was set for February 22, 2018. On the trial date, however, after Pendley initiated plea negotiations, the parties sought a recess. On February 27, Pendley entered guilty pleas to murder in the second degree with a firearm enhancement and theft of a firearm. The trial court subsequently sentenced Pendley to 250 months of confinement.

On direct appeal, Pendley asserted that the trial court wrongly denied his motions to discharge his attorneys, that he received ineffective assistance of

counsel at sentencing, and that the sentencing court improperly imposed a DNA[2] collection fee. We rejected Pendley's arguments related to counsel but reversed in part to strike the DNA collection fee. State v. Pendley, No. 78752-7-I (Wash. Ct. App. Apr. 13, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/787527.pdf.

Pendley thereafter timely filed this personal restraint petition.

II

To successfully challenge a judgment by means of a personal restraint petition, a petitioner must establish either actual and substantial prejudice arising from constitutional error or nonconstitutional error that inherently results in a "complete miscarriage of justice." In re Pers. Restraint of Cook, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). A petitioner must prove this error by a preponderance of the evidence. In re Pers. Restraint of Monschke, 160 Wn. App. 479, 488, 251 P.3d 884 (2010). "The petitioner must support the petition with facts or evidence and may not rely solely on conclusory allegations." Monschke, 160 Wn. App. at 488; RAP 16.7(a)(2)(i). "If the petitioner's allegations are based on matters outside the existing record, the petitioner must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief." In re Pers. Restraint of Rice, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992).

"Once the petitioner makes this threshold showing, the court will then examine the State's response to the petition." Rice, 118 Wn.2d at 886. The State's response must "identify all material disputed questions of fact" and "meet

---

[2] Deoxyribonucleic acid.

the petitioner's evidence with its own competent evidence." Rice, 118 Wn.2d at 886. "If the parties' materials establish the existence of material disputed issues of fact, then the superior court will be directed to hold a reference hearing in order to resolve the factual questions." Rice, 118 Wn.2d at 886-87.

III

Pendley first asserts that his due process rights were violated because the State failed to find or preserve material exculpatory evidence in the form of his toolbox. Because Pendley fails to establish that this evidence was exculpatory, we disagree.

"To comport with due process, the prosecution has a duty to disclose material exculpatory evidence to the defense and a related duty to preserve such evidence for use by the defense." State v. Wittenbarger, 124 Wn.2d 467, 475, 880 P.2d 517 (1994). Material exculpatory evidence is evidence that "possess[es] an exculpatory value that was apparent before it was destroyed" and is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Wittenbarger, 124 Wn.2d at 475. However, the State does not have "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Arizona v. Youngblood, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). Nor does this rule "require police to search for exculpatory evidence." State v. Armstrong, 188 Wn.2d 333, 345, 394 P.3d 373 (2017). Criminal charges must be dismissed due to the State's failure to preserve evidence in two circumstances: when the State failed to preserve

"material exculpatory evidence," and when the State acted in bad faith in failing to preserve "potentially useful" evidence. Armstrong, 188 Wn.2d at 344-45.

Pendley contends that the physical evidence of his toolbox, along with its location on the scene, would have established "ownership and the theft" and that "Mr. Smith in fact approached Mr. Pendley . . . instead of the assumption Pendley showed up and was within point blank range at the onset of the argument." However, even had the police located this toolbox, Pendley fails to show that such evidence would have exculpatory value. Indeed, the record includes no indication of any dispute that Smith had, in fact, stolen Pendley's toolbox and tools. Moreover, the location of the toolbox would not show that Smith was the aggressor. Both Pendley and Nicholas agreed that Smith was hiding the toolbox in the woods when Pendley arrived, and that Smith walked back to Nicholas's and Pendley's location prior to the shooting.

In short, Pendley has not demonstrated that the physical toolbox would have constituted exculpatory evidence. Accordingly, the State had no duty to preserve this evidence. Pendley's due process rights were not violated.[3]

IV

Pendley next asserts that his right to a speedy trial was violated. However, the 19-month delay to trial was necessary for Pendley's counsel to prepare his defense and did not cause undue prejudice to Pendley. Accordingly,

---

[3] Pendley also briefly contends in his petition that the State failed to find or preserve a deli bag that he left in the bush where he was defecating. He claims this failure violated his due process rights because the deli bag (1) showed Pendley's location prior to the shooting, and (2) the date and time stamp on the deli bag would show that Pendley was across town earlier in the day. However, not only was the State not required to search for potentially exculpatory evidence, Pendley fails to establish that either of those facts are exculpatory.

we disagree.

The right to a speedy trial is protected by the federal and state constitutions, and we apply the same analysis under both. State v. Ollivier, 178 Wn.2d 813, 826, 312 P.3d 1 (2013). If a defendant's right to a speedy trial is violated, the charges must be dismissed with prejudice. State v. Iniguez, 167 Wn.2d 273, 282, 217 P.3d 768 (2009).

We use the balancing test set forth in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972) to determine whether the constitutional right to a speedy trial has been violated. Ollivier, 178 Wn.2d at 827. The test is fact-specific and "dependent upon the peculiar circumstances of the case." Barker, 407 U.S. at 530-31. We consider the conduct of both the prosecution and the defense, and we weigh nonexclusive factors including the "'[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" Ollivier, 178 Wn.2d at 827 (alteration in original) (quoting Barker, 407 U.S. at 530). "[T]he defendant ordinarily must establish actual prejudice to the ability to prepare a defense." Ollivier, 178 Wn.2d at 826.

To trigger the balancing test, a defendant must first show that the delay "crossed a line from ordinary to presumptively prejudicial." Iniguez, 167 Wn.2d at 283; accord Ollivier, 178 Wn.2d at 826. "This inquiry is necessarily fact-dependent and relative; for example, 'the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.'" State v. Hatt, 11 Wn. App. 2d 113, 152, 452 P.3d 577 (2019) (quoting Barker, 407 U.S. at 531). Once presumptive prejudice has been established, we

apply the factors set forth in Barker.

The first factor we consider is the length of delay. Iniguez, 167 Wn.2d at 293. "In assessing this factor, the Supreme Court has considered the fact that the bulk of the continuances were sought by defense counsel to ensure adequate preparation to be 'an extremely important aspect of the balancing [test].'" Hatt, 11 Wn. App. 2d at 153-54 (alteration in original) (quoting Ollivier, 178 Wn.2d at 831). This factor weighs against the defendant if "the length of delay was reasonably necessary for defense preparation." Ollivier, 178 Wn.2d at 831.

The second Barker factor is the reason for the delay. 407 U.S. at 530. "When the delay is due to trial preparation needs . . . the first and second factors are closely related." Ollivier, 178 Wn.2d at 831. Generally, "even where continuances are sought over the defendant's objection, delay caused by the defendant's counsel is charged against the defendant under the Barker balancing test if the continuances were sought in order to provide professional assistance in the defendant's interest." Ollivier, 178 Wn.2d at 834.

The third Barker factor is the defendant's assertion of his right to a speedy trial. 407 U.S. at 530. "[A]ssertion of the right is relevant to whether a violation has occurred and also helps to establish or reinforce the conclusion that the defendant has not waived the right." Ollivier, 178 Wn.2d at 838. However, a defendant's objections to continuances will not weigh in favor of the defense or the State if defense "counsel sought the continuances to prepare for trial." Ollivier, 178 Wn.2d at 839-40.

The final factor is whether the delay prejudiced the defendant, in the form

7

of "oppressive pretrial incarceration," "anxiety and concern of the accused," or "the possibility that the defense will be impaired." Barker, 407 U.S. at 532. To show that their constitutional right to a speedy trial has been violated, a defendant ordinarily must establish actual prejudice. Ollivier, 178 Wn.2d at 840. Prejudice in the form of impairment to the defense is the most important "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Barker, 407 U.S. at 532.

Here, Pendley was charged by information on July 25, 2016. Trial was set for February 22, 2018. The parties then sought a recess to explore plea negotiations, which resulted in a guilty plea on February 27, 2018. We conclude that this 19-month delay is sufficient to trigger the Barker analysis. See Hatt, 11 Wn. App. 2d at 153 (18-month delay in first degree murder case sufficient to trigger Barker analysis). Accordingly, we apply Barker factors to determine whether Pendley's right to a speedy trial was violated.

An analysis of the pertinent factors demonstrates that it was not. Defense counsel initiated or joined every motion for continuance in order to allow for adequate time for investigation, including interviewing dozens of witnesses, obtaining funding for two experts, and accommodating the schedules of these experts. Although Pendley objected to these continuances, they were reasonably necessary for defense preparation.

Moreover, contrary to his assertion, Pendley has not demonstrated that any delay meaningfully impaired his defense. Pendley asserts that the testimony of Christine Lee and Carolyn Cloutier would have supported his claim that Smith

punched Pendley in the face before Pendley shot him. Lee and Cloutier visited Pendley in jail shortly after the shooting. When they were interviewed 11 months later, both Lee and Cloutier told the defense investigator that Pendley's face was swollen at the visit. Lee recalled that the right side of his face was swollen, but Cloutier could not remember which side of Pendley's face appeared injured. However, because both witnesses could still corroborate Pendley's report that he was injured, any delay to trial did not meaningfully prejudice Pendley's defense. The fact that Cloutier could not remember which side of Pendley's face was swollen did not negate her corroboration.

Pendley additionally contends that his defense was prejudiced because witnesses Lindsey Miaorani and Corrine Anderson were unable to provide testimony in his favor. Pendley asserts that Miaorani and Anderson witnessed a peaceful interaction between Pendley and Smith the day before the shooting. However, when Miaorani was interviewed, just over a year later, she did not remember the interaction. The defense was unable to locate Anderson. Pendley fails to establish, however, how evidence of this interaction would have supported his defense. All the evidence indicated that the shooting took place after an altercation over stolen tools, and evidence of a peaceful interaction prior to that theft does not negate any of the State's evidence or establish that Pendley acted in self-defense.

Pendley also alludes to a time-to-trial error under CrR 3.3, a separate issue from his constitutional right to a speedy trial. CrR 3.3 provides that when a charge is not brought to trial within the time limits set forth therein, that charge

"shall be dismissed with prejudice." CrR 3.3(h). However, "this procedural right is not self-executing and requires that a motion be filed to exercise it in accordance with the procedure outlined in the rule." State v. Walker, 199 Wn.2d 796, 804, 513 P.3d 111 (2022). "A party who objects to the date set upon the ground that it is not within the time limits prescribed by this rule must, within 10 days after the notice is mailed or otherwise given, move that the court set a trial within those time limits," and a party "lose[s] the right to object" under this rule if they fail to bring such a motion. CrR 3.3(d)(3). Nothing in Pendley's petition indicates that he brought a motion consistent with the requirements (both in terms of timing and content) of CrR 3.3(d)(3). Thus, he does not establish that he did not "lose the right to object." CrR 3.3(d)(3). Nor does he show that he was ever given a trial date that was outside the time limits prescribed by the rule. On the contrary, the trial court appropriately continued the trial date as required in the administration of justice to allow the defense time to prepare for trial, as provided for under CrR 3.3(f)(2). This established new time for trial limits, a fact not acknowledged in Pendley's petition. He does not establish a rule based entitlement to relief. See State v. MacNeven, 173 Wn. App. 265, 268-69, 293 P.3d 1241 (2013) (when right to raise time for trial issue lost in trial court, it may not be raised on direct appeal).

We conclude that any delay to trial was necessary for defense counsel to prepare Pendley's defense and that his defense was not prejudiced by any such delay. Accordingly, Pendley's constitutional right to a speedy trial was not violated.

V

Pendley further asserts that he received ineffective assistance of counsel due to multiple purported failures of his defense counsel. Pendley asserts that his counsel failed to timely interview key witnesses, to assert the claims of error set forth in this petition, to gather evidence related to his injuries and to his location prior to the shooting, to consult with Pendley about his case, and to file a motion for discretionary review. We disagree. Pendley has not shown that his counsel's performance was deficient or that any of his counsel's purported errors impacted his guilty plea.[4]

Both the Sixth Amendment to the United States Constitution and article I, section 22 of our state constitution guarantee defendants the right to effective assistance of counsel in criminal proceedings. Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). This right encompasses the plea process. State v. Sandoval, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). "Counsel's faulty advice can render the defendant's guilty plea involuntary or unintelligent." Sandoval, 171 Wn.2d at 169. To establish that ineffective assistance of trial counsel rendered a guilty plea involuntary, a petitioner must establish that counsel's representation was deficient and that

---

[4] The State contends that Pendley is barred from raising this issue because he raised ineffective assistance of counsel and his counsel's purported failure to timely interview witnesses on direct appeal. "The petitioner in a personal restraint petition is prohibited from renewing an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue." In re Pers. Restraint of Davis, 152 Wn.2d 647, 671, 101 P.3d 1 (2004) (footnotes omitted). However, on direct appeal, Pendley raised ineffective assistance of counsel only in relation to his counsel's performance at sentencing, and witness interviews were only addressed in the context of his motion to discharge counsel. "We may consider a new ground for an ineffective assistance of counsel claim for the first time on collateral review." In re Pers. Restraint of Khan, 184 Wn.2d 679, 689, 363 P.3d 577 (2015) (lead opinion).

prejudice resulted. Sandoval, 171 Wn.2d at 169. Representation was deficient if "it fell below an objective standard of reasonableness based on consideration of all the circumstances." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong presumption that counsel's representation was effective, and the burden is on the defendant alleging ineffective assistance of counsel to overcome that presumption. State v. Manajares, 197 Wn. App. 798, 814, 391 P.3d 530 (2017). "In satisfying the prejudice prong, a defendant challenging a guilty plea must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." In re Pers. Restraint of Riley, 122 Wn.2d 772, 780-81, 863 P.2d 554 (1993).

A

Pendley first asserts that his counsel was ineffective in failing to interview Zachary Nicholas and John Behrens.[5] However, because Pendley establishes neither deficient representation nor any impact on his guilty plea, he fails to demonstrate that his counsel provided ineffective assistance.

Zachary Nicholas was the sole eyewitness to the shooting. Although defense counsel attempted to interview Nicholas, they had difficulty locating and

---

[5] Pendley also alleges that his counsel provided ineffective assistance of counsel by failing to interview Corrine Anderson and failing to interview Lindsey Miaorani in a timely manner. As discussed above, Pendley claimed that Anderson and Miaorani were witnesses to a peaceful interaction between Pendley and Smith the day preceding the shooting. However, Pendley fails to demonstrate that counsel's delay in interviewing Miaorani and unsuccessful attempt to locate Anderson constituted deficient representation, particularly given the number of witness interviews in the case. Furthermore, as we concluded above, Pendley fails to establish that evidence of this interaction supported his defense; similarly, Pendley does not establish a reasonable probability that any failure to timely interview Miaorani and Anderson impacted his guilty plea.

scheduling an interview because Nicholas was homeless. Counsel was still attempting to schedule an interview when plea negotiations began. The record indicates that defense counsel also discussed interviewing John Behrens, who had reported to police that, prior to the shooting, Pendley said he was going to "get" the man who stole his tools. The record does not establish what efforts defense counsel made to interview Behrens.

Pendley does not show, however, that his counsel's efforts to interview Nicholas or Behrens fell below an objective standard of reasonableness. Trial strategy, including "whether to interview some witnesses before trial," rests squarely within an attorney's authority, and counsel must be afforded "a wide latitude and flexibility" in their choice of tactics. State v. Piche, 71 Wn.2d 583, 590, 430 P.2d 522 (1967).

Moreover, Pendley fails to establish a reasonable probability that he would not have pleaded guilty if counsel had interviewed Nicholas or Behrens. He does not submit any evidence supporting his defense that Nicholas or Behrens might have shared in interviews with his counsel. Pendley does assert that he would not have pleaded guilty if his counsel had investigated the case more. However, bald assertions, like Pendley's here, are insufficient for a petitioner to make their prima facie case in a personal restraint petition. Rice, 118 Wn.2d at 886. Pendley made no references to his counsel's preparation in entering his plea, and his counsel described Pendley as "wholeheartedly taking responsibility." At sentencing, the court noted that the case was continued so that defense counsel could "make sure that the case was thoroughly investigated and thoroughly

prepared," and Pendley responded, "I understand that now."

Pendley demonstrates neither deficient representation nor resulting prejudice due to his counsel's purported failure to interview Nicholas or Behrens. Thus, Pendley fails to establish that he received ineffective assistance of counsel in this regard.

B

Pendley additionally asserts that his counsel was ineffective by not pursuing his speedy trial claim and by not finding exculpatory evidence in the form of his toolbox. As discussed above, neither of these claims of error has merit. Accordingly, Pendley's counsel was not ineffective for failing to pursue these claims.

C

Pendley next contends that he received ineffective assistance of counsel when his counsel failed to collect evidence of his injuries shortly after the shooting. He asserts that counsel should have taken photos of his face and teeth and should have interviewed Christine Lee and Carolyn Cloutier sooner, in support of his claim that Smith punched him in the face. However, as discussed above, Pendley's attorneys were able to obtain statements from Lee and Cloutier that Pendley's face appeared to be injured following the shooting. Moreover, the record indicates that the police took pictures of Pendley's face when he was arrested and that jail health records included reference to Pendley's tooth fractures. Pendley does not explain what information further investigation on his attorneys' part would have yielded. Nor does he establish a reasonable

probability that any additional investigation would have impacted his guilty plea. Pendley therefore fails to establish ineffective assistance of counsel on this basis.

D

Pendley further asserts that he received ineffective assistance of counsel because his counsel did not collect evidence of his whereabouts preceding the shooting, including security footage from grocery stores and restaurants that Pendley visited, a time stamped deli bag that Pendley left in the park, and a sign-in sheet from a free community dinner at a church. Pendley asserts that this evidence would have helped to establish that he was not premeditating a murder, which the State intended to accuse him of if the case went to trial.

However, the only evidence that Pendley was premeditating a murder was Behrens's statement that Pendley had said he was going to "get this guy" who stole his tools, which he claimed happened at his house in the afternoon on the day of the shooting. Pendley admitted that he went to Behrens's house before the shooting, but he asserted that he did not see Behrens at that time. Evidence that Pendley was across town earlier in the day would not help establish that Pendley did not speak with Behrens when he went to retrieve his shotgun from Behrens's backyard.

Pendley fails to establish that his counsel's performance was deficient because they did not gather evidence of his whereabouts preceding the shooting. Pendley additionally fails to establish that he would not have pleaded guilty had the evidence been collected. Thus, Pendley's assertion that he received

ineffective assistance of counsel on this basis is unmeritorious.

E

Pendley next contends that his counsel failed to keep him informed and to consult with him on the status of his case. The record does not support this assertion. Rather, defense counsel's time logs show dozens of meetings with Pendley prior to trial. Moreover, Pendley fails to assert that he would not have pleaded guilty had counsel consulted with him regarding any particular information. Thus, Pendley fails to establish ineffective assistance of counsel based on a failure to consult.

F

Finally, Pendley asserts that he received ineffective assistance of counsel based on counsel's failure to file a motion for discretionary review of the court's denial of his motion to substitute counsel.[6] Given that we affirmed the court's rulings on these motions on direct appeal, Pendley, No. 78752-7, slip op. at 9, Pendley cannot establish that counsel performed deficiently by not filing for discretionary review, nor can he establish that he would have pleaded not guilty if this motion had been pursued. Pendley therefore fails to establish ineffective assistance of counsel on this ground.[7]

---

[6] Pendley also briefly asserts that counsel was ineffective for failing to advocate Pendley's pro se motions, including a motion to dismiss on speedy trial grounds. However, as we have noted, trial strategy falls squarely within the purview of counsel. Piche, 71 Wn.2d at 590. Given our decision on Pendley's speedy trial contentions, we certainly cannot say that counsel's performance was deficient for failing to argue this motion.

[7] Because Pendley has failed to establish a genuine dispute of material fact, we deny his request for a reference hearing. "[T]he purpose of a reference hearing is to resolve genuine factual disputes, not to determine whether the petitioner actually has evidence to support his allegations." Rice, 118 Wn.2d at 886.

16

Pendley has failed to demonstrate that he is entitled to relief. Accordingly, we deny his petition.[8]

Duyn, J.

WE CONCUR:

Chung, J.          Coburn, J.

---

[8] Pendley also filed a motion requesting reimbursement of copying costs charged to him by the Department of Corrections (DOC) law library in filing this petition. We deny this motion. To the extent that such a request may be brought in a personal restraint petition, Pendley has not demonstrated that the manner in which DOC provided the copies, and applied its standard applicable to indigent defendants when doing so, was unlawful. Additionally, because Pendley did not prevail on the merits, he is not entitled to costs under RAP 14.1.