# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of:<br><br>TSAI FEN LEE,<br><br>                     Petitioner. | DIVISION ONE<br><br>No. 84274-9-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Tsai Fen Lee filed this personal restraint petition challenging her May 2018 conviction of unlawful imprisonment resulting from a plea agreement. Lee contends that her counsel was constitutionally ineffective for failing to sufficiently advise her of the immigration consequences of the conviction, that her counsel's disclosure of Lee's immigration status at the plea hearing mandates reversal of her conviction, and that her plea was involuntary because she was unaware that King County employees are precluded by county code from honoring immigration detainer requests. Because Lee has not established an entitlement to relief, we deny the petition.

I

Lee was charged with one count of felony stalking based on her harassment of Cassandra Mitchell, an instructor at a Seattle yoga studio where Lee attended classes.[1] Pursuant to an agreement with the State, Lee pleaded

---

[1] Additional facts are set forth in State v. Lee, No. 78512-5-I (Wash. Ct. App. Nov. 16, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/785125.pdf.

guilty to an amended charge of unlawful imprisonment. She provided the following statement as part of the plea: "I, Tsai Fen Lee, did, without intent to threaten, harm, frighten, or injure Cassandra Mitchell, knowingly prevented Cassandra Mitchell from leaving her yoga studio on or around March 27, 2016, in King County, Washington."

At the plea hearing, Lee reported that her attorney, with the assistance of an interpreter, had fully reviewed the plea agreement with her and had answered all of her questions. Lee further stated her understanding that, if she is not a United States citizen, a guilty plea could result in deportation and exclusion from admission to the United States. The State inquired whether Lee's counsel had discussed with her any potential immigration consequences. Counsel replied:

> [W]e are aware of possible adverse . . . immigration consequences that might occur. . . . [W]e have done our legal research, as well as consulted with a criminal immigration specialist . . . to see what, if any, negative impact this plea resolution would have on Ms. Lee's immigration status. . . . [W]e've also tried to find ways of minimizing the effects to the best that we can . . . and we have advised Ms. Lee accordingly.[2]

Sentencing was scheduled for three days later to allow for notification to the victim. Lee's counsel informed the trial court of Lee's request to be released until the sentencing date. The court asked whether Lee had a place to stay. Counsel replied: "I don't believe she does, Your Honor. And, Your Honor, as an officer of the court, I do have [to] disclose that it's my understanding that . . .

---

[2] Counsel's case notes, provided by Lee as an appendix to her petition, corroborate this statement. The notes indicate that counsel both researched pertinent immigration law and consulted with an immigration attorney and that counsel discussed immigration matters with Lee.

there is some sort of immigration hold . . . in her record."[3] The trial court denied Lee's request for release due to concerns that Lee had no place to stay and that "there might be an immigration hold." The court told Lee, "I don't want to release you, and then have something—have you not come back for some reason."

The trial court imposed a standard range sentence of one month of confinement. On direct appeal, Lee asserted that her guilty plea was involuntary because it lacked a sufficient factual basis. We rejected Lee's argument and affirmed her conviction. State v. Lee, No. 78512-5-I (Wash. Ct. App. Nov. 16, 2020) (unpublished), http://www.courts.wa.gov/opinions/pdf/785125.pdf.

Lee thereafter timely filed this personal restraint petition.

II

To successfully challenge a judgment by means of a personal restraint petition, a petitioner must establish either (1) actual and substantial prejudice arising from constitutional error, or (2) nonconstitutional error that inherently results in a "complete miscarriage of justice." In re Pers. Restraint of Cook, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). If a personal restraint petitioner makes a successful ineffective assistance of counsel claim, she necessarily meets the burden to show actual and substantial prejudice. In re Pers. Restraint of Crace, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

---

[3] The record indicates that Lee had overstayed the tourist visa with which she had entered the United States and that an Immigration and Customs Enforcement detainer had been issued as a result.

III

Lee first asserts that she received ineffective assistance of counsel because her counsel failed to advise her that her guilty plea would "inevitably" lead to deportation, exclusion from admission to the United States, or denial of naturalization. We disagree. Lee has not shown that her conviction of unlawful imprisonment has truly clear immigration consequences. Accordingly, her counsel was required only to advise her that the conviction may carry a risk of adverse immigration consequences. Because Lee's counsel did so, his performance was not deficient.

Both the Sixth Amendment to the United States Constitution and article I, section 22 of our state constitution guarantee a defendant the right to effective assistance of counsel in criminal proceedings. Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). This right encompasses the plea process. State v. Sandoval, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). To establish ineffective assistance of trial counsel, a petitioner must demonstrate both that counsel's representation was deficient and that prejudice resulted. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Representation was deficient if "it fell below an objective standard of reasonableness based on consideration of all the circumstances." McFarland, 127 Wn.2d at 334-35. There is a strong presumption that counsel's representation was effective, and the burden is on the defendant alleging ineffective assistance of counsel to overcome that presumption. State v. Manajares, 197 Wn. App. 798, 814, 391 P.3d 530 (2017).

4

"Because of deportation's 'close connection to the criminal process,' advice about deportation consequences falls within 'the ambit of the Sixth Amendment right to counsel.'" Sandoval, 171 Wn.2d at 170 (quoting Padilla v. Kentucky, 559 U.S. 356, 366, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)). The United States Supreme Court recognized in Padilla that "[i]mmigration law can be complex," and that some attorneys "who represent clients facing criminal charges . . . may not be well versed in it." 559 U.S. at 369. Accordingly, the Court held that the specificity of the advice required to be given by defense counsel depends on the clarity of the law. Padilla, 559 U.S. at 369. When the deportation consequence of a particular plea is "truly clear," defense counsel's "duty to give correct advice is equally clear." Padilla, 559 U.S. at 369. However, in the "numerous situations in which the deportation consequences of a particular plea are unclear or uncertain," defense counsel's duty is "more limited." Padilla, 559 U.S. at 369. "When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Padilla, 559 U.S. at 369.

Here, as Lee acknowledges, the record demonstrates that her counsel advised her of the potential for adverse immigration consequences resulting from her guilty plea. Lee asserts, however, that the law is truly clear that her plea would subject her to such immigration consequences and, thus, that her counsel was required to provide more specific advice. We disagree. To prevail on her claim of ineffective assistance of counsel, Lee must overcome the strong

5

presumption that counsel's performance was effective. Lee has failed to demonstrate that it is truly clear that her conviction of unlawful imprisonment, as pled and proven here, would qualify as either a crime of moral turpitude or an aggravated felony for immigration purposes. Accordingly, Lee has not shown that her counsel's representation was deficient.

A

Lee contends that unlawful imprisonment is a crime of moral turpitude for purposes of the Immigration and Nationality Act (INA). However, the actual question presented here is whether it is "truly clear" that the offense to which Lee pleaded guilty qualifies as a crime of moral turpitude, such that defense counsel was required to discharge a higher professional obligation. See Padilla, 559 U.S. at 369. It is not.

Pursuant to the INA, "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude" is excludable from admission into the United States. 8 U.S.C. § 1182(a)(2)(A)(i)(I). Additionally, any "alien who . . . is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission" and "is convicted of a crime for which a sentence of one year or longer may be imposed" is deportable. 8 U.S.C. § 1227(a)(2)(A)(i).

Courts employ the categorical approach in determining whether a conviction qualifies as a crime involving moral turpitude for purposes of deportation. Fugow v. Barr, 943 F.3d 456, 458 (9th Cir. 2019); Turijan v. Holder,

6

744 F.3d 617, 620 (9th Cir. 2014). This approach "'requires us to compare the elements of the crime to the generic definition of moral turpitude and decide whether the conduct proscribed in the statute is broader than, and so does not categorically fall within, this generic definition.'" Turijan, 744 F.3d at 620 (quoting Nunez v. Holder, 594 F.3d 1124, 1129 (9th Cir. 2010), superseded in part as stated by Betansos v. Barr, 928 F.3d 1133, 1142 (9th Cir. 2019)). "If there is a 'realistic probability' that the statute of conviction would be applied to non-turpitudinous conduct, there is no categorical match." Fugow, 943 F.3d at 458 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S. Ct. 815, 166 L. Ed. 2d 683 (2007)).

Here, Lee pleaded guilty to the offense of unlawful imprisonment. A person is guilty of this offense "if he or she knowingly restrains another person." RCW 9A.40.040(1). "'Restrain' means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." RCW 9A.40.010(6).

> Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception, or (b) any means including acquiescence of the victim, if he or she is a child less than sixteen years old or an incompetent person and if the parent, guardian, or other person or institution having lawful control or custody of him or her has not acquiesced.

RCW 9A.40.010(6).

The Ninth Circuit has observed that "moral turpitude is 'perhaps the quintessential example of an ambiguous phrase.'" Turijan, 744 F.3d at 620 (quoting Marmolejo-Campos v. Holder, 558 F.3d 903, 909 (9th Cir. 2009) (en

7

banc)).  Nevertheless, federal courts have articulated a definition of crimes involving moral turpitude.  Such crimes involve "'either fraud or base, vile, and depraved conduct that shocks the public conscience.'"  Fugow, 943 F.3d at 458 (quoting Nunez, 594 F.3d at 1131).  "Only truly unconscionable conduct surpasses the threshold of moral turpitude."  Robles-Urrea v. Holder, 678 F.3d 702, 708 (9th Cir. 2012).  Nonfraudulent crimes involving moral turpitude "almost always involve an intent to injure someone, an actual injury, or a protected class of victims."  Turijan, 744 F.3d at 621.  However, a reckless endangerment offense can constitute a crime involving moral turpitude when the offense creates "'a substantial, actual risk of imminent death.'"  Fugow, 943 F.3d at 459 (quoting Leal v. Holder, 771 F.3d 1140, 1146 (9th Cir. 2014)).

In asserting that unlawful imprisonment constitutes a crime involving moral turpitude for purposes of the INA, Lee relies on Ninth Circuit decisional authority indicating that Hawaii's offense of first degree unlawful imprisonment constitutes such a crime.  See Route v. Garland, 996 F.3d 968 (9th Cir. 2021); Fugow, 943 F.3d 456.  However, Hawaii's offense of unlawful imprisonment in the first degree is materially different than the offense to which Lee pleaded guilty.  Pursuant to Hawaii law, "[a] person commits the offense of unlawful imprisonment in the first degree if the person knowingly restrains another person under circumstances *which expose the person to the risk of serious bodily injury*."  HAW. REV. STAT. § 707-721(1) (emphasis added).  In Fugow, the Ninth Circuit held that it was this element of the offense—that the offender "expose another person to a risk of serious bodily injury"—that rendered the offense morally turpitudinous.  943 F.3d

8

at 459. No such element exists in Washington's offense of unlawful imprisonment. Accordingly, decisional authority regarding the Hawaii offense does not demonstrate that the law is truly clear that our state's unlawful imprisonment offense constitutes a crime of moral turpitude.[4]

Lee has identified no authority indicating that it is truly clear that, in pleading guilty to unlawful imprisonment, she admitted to committing acts that constitute the essential elements of a crime involving moral turpitude. It is Lee's burden to overcome the strong presumption that plea counsel's representation was effective. She has not done so here.

B

Lee additionally contends that, pursuant to the modified categorical approach, her conviction qualifies as a "crime of violence," and, thus, is an aggravated felony, for purposes of the INA. Again, the actual question is whether it is truly clear that the conviction qualifies as a "crime of violence," such that Lee's counsel was required to provide more specific advice regarding the immigration consequences of her plea. Again, it is not.

The INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The term "aggravated felony" means one of the numerous offenses set forth in 8 U.S.C. §1101(a)(43)(A)-(U). Pursuant to the statute, an "aggravated felony" includes "a crime of violence . . . for which the term of imprisonment [is] at least

---

[4] Indeed, as Division Three has recognized, the Ninth Circuit has concluded "that unlawful imprisonment under a similar, if not identical, California statute is *not* a crime involving moral turpitude." Manajares, 197 Wn. App. at 814-15 (citing Turijan, 744 F.3d at 621-22).

one year." 8 U.S.C. § 1101(a)(43)(F). A "crime of violence" is "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. §16(a).[5]

In evaluating whether a prior conviction qualifies as an aggravated felony for immigration purposes, we apply the categorical approach set forth in Taylor v. United States, 495 U.S. 575, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990). See United States v. Pallares-Galan, 359 F.3d 1088, 1099 (9th Cir. 2004). In employing this approach, "we 'look only to the fact of conviction and the statutory definition of the prior offense'" in order to determine "'whether the full range of conduct encompassed by [the state statute] constitutes an aggravated felony.'" Pallares-Galan, 359 F.3d at 1099 (alteration in original) (quoting Taylor, 495 U.S. at 602). "If the state statute under which the defendant was previously convicted has the same elements as, or is narrower than, the federal, generic crime, then the prior conviction can serve as an aggravated felony predicate." Rendon v. Holder, 764 F.3d 1077, 1083 (9th Cir. 2014). This is because "the conviction necessarily implies that the defendant has been found guilty of all the elements of [the predicate offense]." Taylor, 495 U.S. at 599.

To help "implement the categorical approach when a defendant was convicted of violating a divisible statute," courts apply the "modified categorical approach." Descamps v. United States, 570 U.S. 254, 261, 263, 133 S. Ct.

---

[5] We note that the residual clause of the federal criminal code's definition of "crime of violence," set forth at 18 U.S.C. §16(b), and as incorporated into the INA's definition of "aggravated felony," has been determined by the United States Supreme Court to be impermissibly vague in violation of due process. Sessions v. Dimaya, 138 S. Ct. 1204, 200 L. Ed. 2d 549 (2018). Accordingly, we analyze Lee's claim of error with respect only to the "elements clause" of the statute, set forth at 18 U.S.C. §16(a). See Sessions, 138 S. Ct. at 1211.

2276, 186 L .Ed. 2d 438 (2013).  This approach "allows courts to look beyond the statutory text to a limited set of documents to determine the elements of the state offense of which the defendant was convicted when some alternative elements of the state crime would match the federal, generic crime, and other alternative elements would not."  Rendon, 764 F.3d at 1083.  The modified approach

> retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime.  And it preserves the categorical approach's basic method: comparing those elements with the generic offense's.  All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates "several different . . . crimes."

Descamps, 570 U.S. at 263-64 (alteration in original) (quoting Nijhawan v. Holder, 557 U.S. 29, 41, 129 S. Ct. 2294, 174 L. Ed. 2d 22 (2009)).

As an initial matter, we note that unlawful imprisonment can be accomplished without any use or threatened use of force and, thus, is clearly not a categorical crime of violence.  RCW 9A.40.010(6), .040(1).  Lee nevertheless asserts that, pursuant to the modified categorical approach,[6] her admissions in the statement on plea of guilty would be considered in an immigration proceeding.  This would result, according to Lee, in inevitable immigration consequences.  We disagree.

---

[6] We do not hold that the modified categorical approach may properly be applied in determining whether unlawful imprisonment constitutes an aggravated felony for immigration purposes.  We are cognizant that courts may use this approach only when the statute of conviction "lists multiple, alternative elements, and so effectively creates 'several different . . . crimes.'"  Descamps, 570 U.S. at 264 (alteration in original) (quoting Nijhawan, 557 U.S. at 41).  This is because "only divisible statutes enable a sentencing court to conclude that a jury (or judge at a plea hearing) has convicted the defendant of every element of the generic crime."  Descamps, 570 U.S. at 272.  We leave for another day, and upon more thorough briefing, the question of whether our state's unlawful imprisonment statute is "divisible," such that the modified categorical approach may be applied.

Lee's statement on plea of guilty is wholly inconsistent with a determination that the crime to which she pleaded guilty constitutes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. §16(a) (defining "crime of violence"). Indeed, Lee stated in the plea that she knowingly prevented the victim from leaving the yoga studio "*without intent to threaten, harm, frighten, or injure*" her. (Emphasis added.) Nowhere in Lee's statement did she admit to conduct constituting a crime of violence for purposes of the INA.[7]

Importantly, we are presented not with the question of whether the crime of conviction constitutes a deportable offense. Instead, we must determine whether the immigration consequence of the plea is "truly clear," such that Lee's counsel was required to provide more than a general warning of the risk of such a consequence. Padilla, 559 U.S. at 369; Sandoval, 171 Wn.2d at 170. Lee has failed to identify any authority indicating that it is truly clear that her plea admitted to committing acts that qualify as a crime of violence for immigration purposes. Accordingly, we conclude that her counsel's provision of general immigration warnings constituted competent representation.[8] Because Lee has failed to demonstrate deficient representation, we need not reach her claim of prejudice.

---

[7] Lee cites to Ninth Circuit decisional authority in asserting that unlawful imprisonment, as defined by our state statute, constitutes a crime of violence for purposes of the INA. See United States v. Osuna-Armenta, 2010 WL 4867380 (E.D.Wash. Nov. 23, 2010) (unpublished). However, there, the defendant pleaded guilty to unlawful imprisonment by means of the use of physical force. Osuna-Armenta, 2010 WL 4867380, at *5. Accordingly, that authority is inapposite here.

[8] Lee additionally asserts that her counsel was deficient in not informing her regarding the potential that her conviction could render her ineligible for withholding of removal in an immigration proceeding. However, the record nowhere indicates that withholding of removal was relevant here. Accordingly, Lee's counsel was not required to inform her of such potential

IV

Lee additionally asserts that her conviction must be reversed because, she contends, her counsel improperly disclosed her immigration status at the plea hearing. We disagree. Lee has demonstrated neither that she was required to disclose her immigration status to the court nor that any statement made by her counsel impacted her plea. Additionally, Lee fails to show that RCW 10.40.200 provides the substantive remedy requested here.

Our legislature enacted RCW 10.40.200 "to promote fairness to . . . accused individuals [who are not citizens of the United States] by requiring in such cases that acceptance of a guilty plea be preceded by an appropriate warning of the special consequences for such a defendant which may result from the plea." RCW 10.40.200(1). To that end, the statute mandates that

> [p]rior to acceptance of a plea of guilty to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall determine that the defendant has been advised of the following potential consequences of conviction for a defendant who is not a citizen of the United States: Deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

RCW 10.40.200(2). The statute further states: "It is . . . the intent of the legislature that at the time of the plea no defendant be required to disclose his or her legal status to the court." RCW 10.40.200(1).

Lee asserts that her counsel improperly disclosed her immigration status during the plea hearing. Following Lee's guilty plea, her counsel informed the

_____

consequences. In any event, Lee does not provide argument regarding whether it is truly clear that her plea would result in such immigration consequences.

court of her request to be released until sentencing three days later. The court asked whether Lee had a place to stay. Counsel responded, "I don't believe she does, Your Honor. And, Your Honor, as an officer of the court, I do have [to] disclose that it's my understanding . . . from the King County Jail employees that there is some sort of immigration hold . . . in her record." The court denied Lee's request for release.

According to Lee, counsel's statement that he believed there was an immigration hold in her record constituted improper disclosure of Lee's immigration status that "directly influenced" the court's decision to deny her request for release. This is not so. First, RCW 10.40.200(1) sets forth the legislature's intent, in the context of mandated warnings of the potential immigration consequences of a plea, that the "defendant may not be required to disclose . . . her legal status to the court." Here, however, Lee was not required to disclose her legal status. Moreover, the statute on which she relies nowhere provides that defense counsel commits misconduct by informing the court of a potential immigration hold in a public record.

Second, Lee has not demonstrated that the statement made by defense counsel impacted her plea. Indeed, because the statement was made subsequent to the plea, she could not persuasively do so. Instead, Lee asserts that counsel's statement resulted in the court's denial of her request for release for the three days prior to sentencing. Even were this so, Lee was released from confinement over five years ago. Accordingly, she is no longer under restraint due to any possible error resulting from her counsel's statement to the court.

14

See RAP 16.4(b). Moreover, even were Lee able to demonstrate error, she fails to show that RCW 10.40.200(1) provides any substantive remedy, particularly the vacation of a conviction, as Lee requests here.

For each of the reasons set forth above, we conclude that Lee is not entitled to relief due to her counsel's statement to the court that an immigration hold was present in the public record.

V

Lee further asserts that her plea was involuntary because she was unaware that King County Code § 2.15.020 precludes county employees from honoring immigration detainer requests. Again, we disagree. Only a misunderstanding regarding the consequences of a guilty plea can render the plea involuntary. Even were Lee misinformed regarding whether she would be released from confinement if she posted bail, such misinformation does not involve the consequences of her guilty plea. Accordingly, Lee's plea was not rendered involuntary by the asserted misunderstanding.

"A guilty plea is constitutionally involuntary when a defendant is misinformed about a direct consequence of pleading guilty." In re Pers. Restraint of Reise, 146 Wn. App. 772, 787, 192 P.3d 949 (2008). "A direct consequence of pleading guilty is one having a definite, immediate, and largely automatic effect on the sentence." Reise, 146 Wn. App. at 787. In contrast, collateral consequences are those "that are not 'automatically imposed' by the sentencing court, that do not 'automatically enhance' the sentence, or that do 'not alter the standard of punishment.'" Reise, 146 Wn. App. at 787 (quoting State v. Ward,

15

123 Wn.2d 488, 513-14, 869 P.2d 1062 (1994)).  In other words, "[t]he distinction between collateral and direct consequences depends upon whether the consequence 'represents a definite, immediate, and largely automatic effect on the range of the defendant's punishment.'"  In re Pers. Restraint of Quinn, 154 Wn. App. 816, 836, 226 P.3d 208 (2010) (internal quotation marks omitted) (quoting Ward, 123 Wn.2d at 512).  A defendant need not be advised of all collateral consequences of pleading guilty.  Quinn, 154 Wn. App. at 836.

Here, Lee asserts that her counsel advised that, due to an immigration hold on Lee's record, she would not be released from confinement if she posted bail.  According to Lee, her plea was rendered involuntary because she was unaware that King County Code § 2.15.020 prohibits the county jail from honoring federal immigration detainers.  Had she known about this county code provision, Lee contends, she would have been released on bail and then chosen to go to trial.  Thus, the argument goes, Lee's plea was rendered involuntary because she was unaware that King County employees are prohibited from honoring federal immigration detainers.[9]

Lee's claim of error is premised on a misunderstanding of the voluntariness of a guilty plea.  Only when a defendant is misinformed regarding a consequence of the plea is that plea rendered involuntary.  See, e.g., Quinn, 154 Wn. App. at 836; Reise, 146 Wn. App. at 787.  Here, Lee does not assert any

---

[9] The underlying concern, demonstrated by the record but not acknowledged in Lee's briefing, is that she had overstayed the tourist visa with which she had entered the country.  The immigration detainer was unrelated to the offense to which Lee pleaded guilty, and her plea counsel was not representing her with regard to any immigration matter.  Nor could plea counsel guarantee that, were bail posted, it would not be forfeited and that Lee would not be removed from the country pursuant to the immigration detainer.

misunderstanding regarding the consequences of her plea.  Rather, she asserts that she would have chosen to go to trial had she been released from confinement prior to the plea hearing.  Lee's desire to be released from confinement, however, demonstrates neither that she was misinformed regarding the consequences of her plea nor that, as a result, her guilty plea was rendered involuntarily.  As Lee does not claim any misunderstanding regarding either direct or collateral consequences of the plea, she cannot demonstrate that her plea was involuntary.[10]

Lee has failed to demonstrate that she is entitled to relief.  Accordingly, we deny her petition.

Dwyer, J.

WE CONCUR:

Birk, J.        Hazelrigg, A.C.J.

---

[10] In her reply brief, Lee additionally appears to assert that her plea was involuntary due to counsel's purported failure to interview witnesses and to seek dismissal of the original felony stalking charge.  According to Lee, these purported misrepresentations impacted her decision to plead guilty to the unlawful imprisonment charge.  However, again, Lee asserts no misunderstanding of the consequences of her guilty plea.  Accordingly, she cannot establish that the plea was involuntary.

17